# EL PASO NATURAL GAS CO. ET AL. *v.* NEZTSOSIE ET AL.

No. 98–6.   Argued March 2, 1999—Decided May 3, 1999

474

SOUTER, J., delivered the opinion for a unanimous Court.

*James R. Atwood* argued the cause for petitioners. With him on the briefs were *Richard A. Meserve, Lynn H. Slade,* and *Walter E. Stern.*

*Jonathan E. Nuechterlein* argued the cause for the United States as *amicus curiae* urging reversal. With him on the brief were *Solicitor General Waxman, Assistant Attorney General Schiffer, Deputy Solicitor General Kneedler, Martin W. Matzen, John D. Leshy, Mary Anne Sullivan,* and *John F. Cordes.*

*H. Bartow Farr III* argued the cause for respondents. With him on the brief were *Seth Richard Lesser, Max W. Berger, Louis C. Paul, Richard G. Taranto, Moshe Maimon,* and *Steven J. Phillips.**

---

*Briefs of *amici curiae* urging reversal were filed for the State of South Dakota et al. by *Mark W. Barnett,* Attorney General of South Dakota, and *John Patrick Guhin,* Deputy Attorney General, and by the Attorneys General for their respective States as follows: *Daniel E. Lungren* of California, *Frank J. Kelley* of Michigan, *Joseph P. Mazurek* of Montana, *Frankie Sue Del Papa* of Nevada, *Dennis C. Vacco* of New York, *Jan Graham* of Utah, and *Gay Woodhouse* of Wyoming; for Lewis County, Idaho, by *Kimron R. Torgerson, Marc A. Lyons,* and *Tom D. Tobin;* for the Association of American Railroads by *Betty Jo Christian, Charles G. Cole, Sara E. Hauptfuehrer,* and *Daniel Saphire;* for the Interstate Natural Gas Association of America by *James W. McCartney* and *Richard H. Page;* for Kerr-McGee Corp. by *John Townsend Rich, Richard T. Conway, Michael R. Comeau,* and *Jon J. Indall;* and for the National Mining Association by *James B. Hamlin, Anthony J. Thompson,* and *Harold P. Quinn, Jr.*

Briefs of *amici curiae* urging affirmance were filed for the Fallon Paiute-Shoshone Tribe by *Melody L. McCoy* and *Kim Jerome Gottschalk;*

JUSTICE SOUTER delivered the opinion of the Court.

The issue is whether the judicially created doctrine of tribal-court exhaustion, requiring a district court to stay its hand while a tribal court determines its own jurisdiction, should apply in this case, which if brought in a state court would be subject to removal. We think the exhaustion doctrine should not extend so far.

I

With the object of "encourag[ing] the private sector to become involved in the development of atomic energy for peaceful purposes," *Duke Power Co.* v. *Carolina Environmental Study Group, Inc.*, 438 U. S. 59, 63 (1978), Congress passed the Atomic Energy Act of 1954 (AEA), 68 Stat. 919, a broad scheme of federal regulation and licensing. Because it "soon became apparent that profits from the private exploitation of atomic energy were uncertain and the accompanying risks substantial," *Duke Power, supra*, at 63, in 1957 Congress amended the AEA with the Price-Anderson Act, 71 Stat. 576. Price-Anderson provided certain federal licensees with a system of private insurance, Government indemnification, and limited liability for claims of "public liability," now defined generally as "any legal liability arising out of or resulting from a nuclear incident or precautionary evacuation . . . ." 42 U. S. C. § 2014(w). The Act defines "nuclear incident" as "any occurrence . . . within the United States causing . . . bodily injury, sickness, disease, or death, or loss of or damage to property, or loss of use of property, arising out of or resulting from the radioactive, toxic, explo-

and for Bertram Roberts et al. by *Brian Wolfman, Alan B. Morrison*, and *Ervin A. Gonzalez.*

Briefs of *amici curiae* were filed for American Nuclear Insurers by *Donald E. Jose* and *David Wiedis;* and for the Navajo Nation by *Terence M. Gurley* and *Steven J. Bloxham.*

sive, or other hazardous properties of source, special nuclear, or byproduct material . . . ." § 2014(q).[1]

In the wake of the 1979 accident at the Three Mile Island nuclear power plant, suits proliferated in state and federal courts, but because the accident was not an "extraordinary nuclear occurrence," within the meaning of the Act, see § 2014(j), there was no mechanism for consolidating the claims in federal court. See S. Rep. No. 100–218, p. 13 (1987). Congress responded in 1988 by amending the Act to grant United States district courts original and removal jurisdiction over all "public liability actions," 102 Stat. 1076, 42 U. S. C. § 2210(n)(2), defined as suits "asserting public liability," § 2014(hh), which "shall be deemed to be . . . action[s] arising under" § 2210. The Act now provides the mechanics for consolidating such actions, § 2210(n)(2), for managing them once consolidated, § 2210(n)(3), and for distributing limited compensatory funds, § 2210(o).

In 1995, respondents Laura and Arlinda Neztsosie, two members of the Navajo Nation, filed suit in the District Court of the Navajo Nation, Tuba City District, against petitioner El Paso Natural Gas Company and one of its subsidiaries, Rare Metals Corporation. The Neztsosies alleged that on the Navajo Nation Reservation, from 1950 to 1965, El Paso and Rare Metals operated open pit uranium mines, which collected water then used by the Neztsosies for a number of things, including drinking. The Neztsosies claimed that, as a result, they suffered severe injuries from exposure to radioactive and other hazardous materials, for which they sought compensatory and punitive damages under Navajo tort law. App. 18a–27a. In 1996, respondent Zonnie Richards, also a member of the Navajo Nation, brought suit for herself and her husband's estate in the District Court of the

---

[1] "Source material" includes uranium and uranium ore. 42 U. S. C. § 2014(z). "Byproduct material" includes "the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its source material content." § 2014(e).

Navajo Nation, Kayenta District, against defendants including the Vanadium Corporation of America (VCA), predecessor by merger of petitioner Cyprus Foote Mineral Company. Richards raised Navajo tort law claims for wrongful death and loss of consortium arising from uranium mining and processing on the Navajo Nation Reservation by VCA and other defendants from the 1940's through the 1960's. 136 F. 3d 610, 613 (CA9 1998); App. 39a–60a.

El Paso and Cyprus Foote each filed suit in the United States District Court for the District of Arizona, seeking to enjoin the Neztsosies and Richards from pursuing their claims in the Tribal Courts. The District Court, citing the tribal-court exhaustion doctrine of *National Farmers Union Ins. Cos.* v. *Crow Tribe,* 471 U. S. 845 (1985), denied preliminary injunctions "except to the extent" that the Neztsosies and Richards sought relief in the Tribal Courts under the Price-Anderson Act. App. 71a, 73a. The practical consequences of those injunctions were left in the air, however, since the District Court declined to decide whether the Act applied to the claims brought by the Neztsosies and Richards, leaving those determinations to the Tribal Courts in the first instance. *Id.,* at 71a, 73a. Both El Paso and Cyprus Foote appealed.

On the companies' consolidated appeals, the Ninth Circuit affirmed the District Court's decisions declining to enjoin the Neztsosies and Richards from pursuing non-Price-Anderson Act claims, as well as the decisions to allow the Tribal Courts to decide in the first instance whether the Neztsosies' and Richards's tribal claims fell within the ambit of the Price-Anderson Act. 136 F. 3d, at 617, n. 4, 620. But the Court of Appeals did not rest there. Although neither the Neztsosies nor Richards had appealed the partial injunctions against them, the Ninth Circuit *sua sponte* addressed those District Court rulings, citing "important comity considerations involved." *Id.,* at 615. The court reversed as to the injunctions, holding that the Act contains no "express juris-

dictional prohibition" barring the tribal court from determining its jurisdiction over Price-Anderson Act claims. *Id.*, at 617–620. Judge Kleinfeld dissented, concluding that the unappealed partial injunctions against litigating Price-Anderson Act claims in tribal court should be treated as law of the case, that all of the tribal-law claims were actually Price-Anderson Act claims, and that exhaustion was not required. *Id.*, at 620–622. We granted certiorari, 525 U. S. 928 (1998), and now vacate and remand.

## II

There is one matter preliminary to the principal issue. Because respondents did not appeal those portions of the District Court's orders enjoining them from pursuing Price-Anderson Act claims in Tribal Court, those injunctions were not properly before the Court of Appeals, which consequently erred in addressing them. We have repeatedly affirmed two linked principles governing the consequences of an appellee's failure to cross-appeal. Absent a cross-appeal, an appellee may "urge in support of a decree any matter appearing in the record, although his argument may involve an attack upon the reasoning of the lower court," but may not "attack the decree with a view either to enlarging his own rights thereunder or of lessening the rights of his adversary." *United States* v. *American Railway Express Co.*, 265 U. S. 425, 435 (1924); see also *Union Tool Co.* v. *Wilson*, 259 U. S. 107, 111 (1922). We recognized the latter limitation as early as 1796, see *McDonough* v. *Dannery*, 3 Dall. 188, 198, and more than 60 years ago we spoke of it as "inveterate and certain," *Morley Constr. Co.* v. *Maryland Casualty Co.*, 300 U. S. 185, 191 (1937).

The Court of Appeals acknowledged the rule, but, in light of the natural temptation to dispose of the related questions of jurisdiction and exhaustion at one blow, still thought it could take up the unappealed portions of the District Court's orders *sua sponte* because "important comity considera-

tions" were involved. 136 F. 3d, at 615. The Court of Appeals apparently took the view, shared by a number of courts over the years, that the prohibition on modifying judgments in favor of a nonappealing party is a "rule of practice," subject to exceptions, not an unqualified limit on the power of appellate courts. Petitioners and the Government say the Court of Appeals was mistaken, seeing the rule as an unqualified bound on the jurisdiction of the courts of appeals. We need not decide the theoretical status of such a firmly entrenched rule,[2] however, for even if it is not strictly jurisdictional (a point we do not resolve) the "comity considerations" invoked by the Court of Appeals to justify relaxing it are clearly inadequate to defeat the institutional interests in fair notice and repose that the rule advances. Indeed, in more than two centuries of repeatedly endorsing the cross-appeal requirement, not a single one of our holdings has ever recognized an exception to the rule.[3]

[2] The issue has caused much disagreement among the Courts of Appeals and even inconsistency within particular Circuits for more than 50 years. For a survey of many of the cases, see *Marts* v. *Hines,* 117 F. 3d 1504, 1507–1511 (CA5 1997) (Garwood, J., dissenting), cert. denied, 522 U. S. 1058 (1998). For recent cases taking opposing positions, compare, *e. g., Young Radiator Co.* v. *Celotex Corp.,* 881 F. 2d 1408, 1416 (CA7 1989) (jurisdictional), with *United States* v. *Tabor Court Realty Corp.,* 943 F. 2d 335, 342–344 (CA3 1991) (rule of practice), cert. denied *sub nom. Linde* v. *Carrier Coal Enterprises, Inc.,* 502 U. S. 1093 (1992). For a discussion of the issue among the members of a distinguished panel of the Second Circuit, though without any reference to *Morley Constr. Co.* v. *Maryland Casualty Co.,* 300 U. S. 185 (1937), see *In re Barnett,* 124 F. 2d 1005, 1008–1013 (CA2 1942) (Frank, J., joined by Clark, J.); *id.,* at 1013–1014 (L. Hand, J., dissenting).

[3] On three occasions since *Morley Constr. Co.,* we have made statements in dictum that might be taken to suggest the possibility of exceptions to the rule. Only one of those statements concerned the power of the courts of appeals. See *Bowen* v. *Postal Service,* 459 U. S. 212, 217–218, n. 7 (1983); *id.,* at 244 (White, J., concurring in judgment in part and dissenting in part); *id.,* at 246–247 (REHNQUIST, J., dissenting). In *Strunk* v. *United States,* 412 U. S. 434, 437 (1973), we suggested in passing that there might be occasions when, in a criminal case, the Court might address a constitu-

On the assumption that comity is not enough, respondents offer one additional justification for an exception to the cross-appeal requirement here. They point out that the District Court orders appealed from were preliminary injunctions and thus interlocutory, not final, decrees. Respondents contend that because they knew they could challenge the substance of those orders on appeal from a final judgment, they should not be penalized for failing to cross-appeal at this preliminary stage of the suit. But this argument misconceives the nature of the cross-appeal requirement. It is not there to penalize parties who fail to assert their rights, but is meant to protect institutional interests in the orderly

tional issue resolved in favor of a petitioner and not raised in a cross-petition for certiorari. In *United States* v. *ITT Continental Baking Co.*, 420 U. S. 223, 226, n. 2 (1975), we suggested that the cross-petition requirement might be a "matter of practice and control of our docket" rather than of "our power." Although some might see *Berkemer* v. *McCarty*, 468 U. S. 420, 435, n. 23 (1984), as countenancing exceptions to the cross-petition requirement, see R. Stern, E. Gressman, S. Shapiro, & K. Geller, Supreme Court Practice 364 (7th ed. 1993); see also *Board of Trustees of State Univ. of N. Y.* v. *Fox*, 492 U. S. 469, 485–486 (1989), we have made clear that such a view of *Berkemer* is mistaken. See *Northwest Airlines, Inc.* v. *County of Kent*, 510 U. S. 355, 365, n. 8 (1994).

We have repeatedly expressed the rule in emphatic terms, see, *e. g.*, *Helvering* v. *Pfeiffer*, 302 U. S. 247, 250–251 (1937) ("[A]n appellee cannot without a cross-appeal attack a judgment entered below"), though admittedly we have normally had occasion to do so in reference to our own certiorari jurisdiction rather than to the appellate jurisdiction of the courts of appeals, see, *e. g.*, *LeTulle* v. *Scofield*, 308 U. S. 415, 421–422 (1940) ("[W]e cannot afford [the nonpetitioning party] relief"); *NLRB* v. *Express Publishing Co.*, 312 U. S. 426, 431–432 (1941) ("[O]ur review is limited"; "that question is not open here"); *Alaska Industrial Bd.* v. *Chugach Elec. Assn., Inc.*, 356 U. S. 320, 325 (1958) (those questions are "not open"); *NLRB* v. *International Van Lines*, 409 U. S. 48, 52, n. 4 (1972) ("not before us"); *Trans World Airlines, Inc.* v. *Thurston*, 469 U. S. 111, 119, n. 14 (1985) ("An argument that would modify the judgment . . . cannot be presented unless a cross-petition has been filed"). Cf. *Federated Department Stores, Inc.* v. *Moitie*, 452 U. S. 394, 398–402 (1981) (res judicata bars nonappealing parties from gaining the benefit of coparties' victory on appeal).

functioning of the judicial system, by putting opposing parties and appellate courts on notice of the issues to be litigated and encouraging repose of those that are not. Fairness of notice does not turn on the interlocutory character of the orders at issue here, and while the interest in repose is somewhat diminished when a final appeal may yet raise the issue, it is still considerable owing to the indefinite duration of the injunctions. Preliminary injunctions are, after all, appealable as of right, see 28 U. S. C. § 1292(a)(1), and the timely filing requirements of Federal Rules of Appellate Procedure 4 and 26(b) squarely cover such appeals. Neither those Rules nor the interests animating the cross-appeal requirement offer any leeway for such an exception.

## III

Before the District Court, petitioners asserted simply that the Tribal Court lacked subject-matter jurisdiction over Price-Anderson Act claims in respondents' tribal-court suits, see App. 14a, 15a, 37a, and sought injunctive relief.[4] The District Court responded by enjoining respondents from pursuing any Price-Anderson claims in Tribal Court, and because they did not appeal the injunction, we have no occasion

---

[4] At oral argument before the Court of Appeals, petitioners introduced for the first time the essence of the theory on which they now rely, that the Tribal Courts somehow lacked jurisdiction over Price-Anderson claims because under *Strate* v. *A–1 Contractors,* 520 U. S. 438 (1997), a tribal court has jurisdiction over a nonmember only where the tribe has regulatory jurisdiction with respect to the matter at issue, and Congress has completely occupied the field of nuclear regulation. See 136 F. 3d 610, 618, n. 5 (CA9 1998); Brief for Petitioners 29–33. But *Strate* dealt with claims against nonmembers arising on state highways, and "express[ed] no view on the governing law or proper forum when an accident occurs on a tribal road within a reservation." *Strate, supra,* at 442. By contrast, the events in question here occurred on tribal lands. 136 F. 3d, at 618, n. 5.

to consider its merits.[5]   Yet the injunction has no practical significance without a determination whether respondents' causes of action are as a matter of law Price-Anderson claims under the terms of 42 U. S. C. §§ 2210(n)(2) and 2014(hh). This question the District Court declined to answer, thinking that the doctrine of tribal-court exhaustion required it to abstain from deciding a question of tribal-court jurisdiction until the Tribal Courts themselves had addressed the matter. The Court of Appeals approved the abstention on the theory that the comity rationale underlying the tribal exhaustion doctrine applied.   See 136 F. 3d, at 613–615, 620.   We think, however, that it does not.

*National Farmers Union Ins. Cos.* v. *Crow Tribe,* 471 U. S. 845 (1985), was a suit involving the federal-question jurisdiction of a United States District Court under 28 U. S. C. § 1331, brought to determine "whether a tribal court has the power to exercise civil subject-matter jurisdiction over non-Indians," 471 U. S., at 855.   We held, initially, that federal courts have authority to determine, as a matter "arising under" federal law, see 28 U. S. C. § 1331, whether a tribal court has exceeded the limits of its jurisdiction.   See 471 U. S., at 852–853.   After concluding that federal courts have subject-matter jurisdiction to entertain such a case, we announced that, prudentially, a federal court should stay its hand "until after the Tribal Court has had a full opportunity to determine its own jurisdiction."   *Id.,* at 857.   In justification of a prudential requirement of tribal exhaustion, we stated that "the existence and extent of a tribal court's jurisdiction will require a careful examination of tribal sovereignty, the extent to which that sovereignty has been

_____

[5] Although we do not reach the merits of the injunction, candor requires acknowledging that our view of the inappropriateness of applying tribal exhaustion, adumbrated *infra,* at 485–487, suggests that, notwithstanding the silence of the Price-Anderson Act with respect to tribal courts, the exercise of tribal jurisdiction over claims found to fall within the Act once a defendant has sought a federal forum would be anomalous at best.

altered, divested, or diminished, as well as a detailed study of relevant statutes, Executive Branch policy as embodied in treaties and elsewhere, and administrative or judicial decisions," *id.*, at 855–856 (footnote omitted). The same "considerations of comity," *Iowa Mut. Ins. Co.* v. *LaPlante*, 480 U. S. 9, 15 (1987), provided the rationale for extending the doctrine to cases where a defendant in tribal court asserts federal-diversity jurisdiction in a related action in district court. *Id.*, at 16. Exhaustion was appropriate in each of those cases because "Congress is committed to a policy of supporting tribal self-government . . . [which] favors a rule that will provide the forum whose jurisdiction is being challenged the first opportunity to evaluate the factual and legal bases for the challenge." *National Farmers Union Ins. Cos., supra,* at 856.

This case differs markedly. By its unusual preemption provision, see 42 U. S. C. § 2014(hh),[6] the Price-Anderson Act transforms into a federal action "any public liability action arising out of or resulting from a nuclear incident," § 2210(n)(2). The Act not only gives a district court original jurisdiction over such a claim, see *ibid.*, but provides for removal to a federal court as of right if a putative Price-Anderson action is brought in a state court, see *ibid.* Congress thus expressed an unmistakable preference for a federal forum, at the behest of the defending party, both for

---

[6] This structure, in which a public liability action becomes a federal action, but one decided under substantive state-law rules of decision that do not conflict with the Price-Anderson Act, see 42 U. S. C. § 2014(hh), resembles what we have spoken of as "'complete pre-emption' doctrine," see *Caterpillar Inc.* v. *Williams*, 482 U. S. 386, 393 (1987), under which "the pre-emptive force of a statute is so 'extraordinary' that it 'converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule,'" *ibid.* (quoting *Metropolitan Life Ins. Co.* v. *Taylor*, 481 U. S. 58, 65 (1987)). We have found complete preemption to exist under the Labor Management Relations Act, 1947, see *Caterpillar Inc., supra,* at 393–394, and the Employee Retirement Income Security Act of 1974, see *Metropolitan Life, supra,* at 65–66.

litigating a Price-Anderson claim on the merits and for determining whether a claim falls under Price-Anderson when removal is contested.

Petitioners seek the benefit of what in effect is the same scheme of preference for a federal forum when they ask for an injunction against further litigation in the tribal courts. To be sure, their complaints claimed that the tribal courts (unlike state courts) had no jurisdiction over these actions, on the ground that they were Price-Anderson claims. But petitioners unmistakably seek to enjoin litigation of these claims in the tribal courts, whether or not those courts would have jurisdiction to exercise in the absence of objection. Injunction against further litigation in tribal courts would in practical terms give the same result as a removal held to be justified on the ground that the actions removed fell under the Price-Anderson definitions of claims of public liability: if respondents then should wish to proceed they would be forced to refile their claims in federal court (or a state court from which the claims would be removed). The issue, then, is whether Congress would have chosen to postpone federal resolution of the enjoinable character of this tribal-court litigation, when it would not have postponed federal resolution of the functionally identical issue pending in a state court.

We are at a loss to think of any reason that Congress would have favored tribal exhaustion. Any generalized sense of comity toward nonfederal courts is obviously displaced by the provisions for preemption and removal from state courts, which are thus accorded neither jot nor tittle of deference.[7] The apparent reasons for this congressional

---

[7] This is not to say that the existence of a federal preemption defense in the more usual sense would affect the logic of tribal exhaustion. Under normal circumstances, tribal courts, like state courts, can and do decide questions of federal law, and there is no reason to think that questions of federal preemption are any different. See *Santa Clara Pueblo* v. *Martinez*, 436 U. S. 49, 65 (1978) (tribal courts available to vindicate federal rights). The situation here is the rare one in which statutory provisions

policy of immediate access to federal forums are as much applicable to tribal- as to state-court litigation.

The Act provides clear indications of the congressional aims of speed and efficiency. Section 2210(n)(3)(A) empowers the chief judge of a district court to appoint a special caseload management panel to oversee cases arising from a nuclear incident. The functions of such panels include case consolidation, § 2210(n)(3)(C)(i); setting of priorities, § 2210(n)(3)(C)(ii); "promulgat[ion] [of] special rules of court . . . to expedite cases or allow more equitable consideration of claims," § 2210(n)(3)(C)(v); and implementation of such measures "as will encourage the equitable, prompt, and efficient resolution of cases arising out of the nuclear incident," § 2210(n)(3)(C)(vi).

The terms of the Act are underscored by its legislative history, which expressly refers to the multitude of separate cases brought "in various state and Federal courts" in the aftermath of the Three Mile Island accident. See S. Rep. No. 100–218, at 13. This history adverts to the expectation that "the provisions for consolidation of claims in the event of any nuclear incident . . . would avoid the inefficiencies resulting from duplicative determinations of similar issues in multiple jurisdictions that may occur in the absence of consolidation." *Ibid.*

Applying tribal exhaustion would invite precisely the mischief of "duplicative determinations" and consequent "inefficiencies" that the Act sought to avoid, and the force of the congressional concerns saps the two arguable justifications for applying tribal exhaustion of any plausibility in these circumstances. The first possible justification might be that tribal exhaustion is less troubling than state-court exhaustion, because in the former situation the district court may review jurisdiction after recourse to tribal court has been exhausted, see *National Farmers Union Ins. Cos.*, 471 U. S.,

---

for conversion of state claims to federal ones and removal to federal courts express congressional preference for a federal forum.

at 857, whereas a state court's determination of its jurisdiction is final except for the possibility of our review on certiorari. But the likelihood of effective review says nothing to the Act's insistence on efficient disposition of public liability claims, which would of course be curtailed by an exhaustion requirement. It is not credible that Congress would have uniquely countenanced, let alone chosen, such a delay when public liability claims are brought in tribal court.

The second possible justification is that the absence of any statutory provision for removal from tribal court running parallel to the terms authorizing state-court removal might ground a negative inference against any intent to govern Price-Anderson actions in tribal courts, in accordance with the usual policy of letting a plaintiff choose the forum. But only the most zealous application of the maxim *expressio unius est exclusio alterius* could answer the implausibility that Congress would have intended to force defendants to remain in tribal courts. The congressional reasoning sketched above is no less forceful when plaintiffs choose tribal courts; leaving such claims in these courts would just as effectively thwart the Act's policy of getting such cases into a federal forum for consolidation, as leaving them in state forums would do.

Why, then, the congressional silence on tribal courts? If *"expressio unius . . ."* fails to explain the Congress's failure to provide for tribal-court removal, what is the explanation? After all we have said, inadvertence seems the most likely. We have not been told of any nuclear testing laboratories or reactors on reservation lands, and if none was brought to the attention of Congress either, Congress probably would never have expected an occasion for asserting tribal jurisdiction over claims like these. Now and then silence is not pregnant.

Because the comity rationale for tribal exhaustion normally appropriate to a tribal court's determination of its jurisdiction stops short of the Price-Anderson Act, the District

Court should have decided whether respondents' claims constituted "public liability action[s] arising out of or resulting from a nuclear incident," 42 U. S. C. § 2210(n)(2). We accordingly vacate the judgment of the Court of Appeals and remand with instructions to remand the case to the District Court for proceedings consistent with this opinion.

*So ordered.*