**AUTO OWNERS INSURANCE COMPANY, Plaintiff,**

v.

**Hazel S. SAUNOOKE, Individually and as Executrix of the Estate of Alan B. Stalcup, Deceased, Defendant.**

**No. 2:99CV79.**

United States District Court, W.D. North Carolina, Bryson City Division.

May 27, 1999.

Allan R. Tarleton, Dale A. Curriden, Van Winkle, Buck, Wall, Starnes & Davis, Asheville, NC, for plaintiff.

Charles W. Kite, Sevierville, TN, for defendant.

## MEMORANDUM AND ORDER OF DISMISSAL

THORNBURG, District Judge.

**THIS MATTER** is before the Court on the Plaintiff's motion for injunctive relief. The motion is denied, and the Court *sua sponte* dismisses the action without prejudice.

## I. BACKGROUND

On April 28, 1999, Auto Owners Insurance Company (Auto) filed this action seeking an injunction against Hazel Saunooke to stop her litigation of a claim pending in the Court of Indian Offenses for the Eastern Band of Cherokee Indians. In June 1997, Saunooke sued Auto in the Court of Indian Offenses for failure to pay insurance proceeds after a fire to a business premises owned by Saunooke on the Cherokee Indian Reservation. **Exhibit A, *attached to* Complaint, filed April 28, 1999.** Auto, who was represented by the same attorney appearing here, promptly moved to dismiss for lack of subject matter and personal jurisdiction. **Exhibit C, *attached to* Complaint.** In January 1998, Judge Bradley denied the motion to dismiss and Auto appealed to the Appellate Division of the Court of Indian Offenses. **Exhibits D and E, *attached to* Complaint.** On appeal, Auto raised the same issue presented here: that there is no proof the Assistant Secretary of Interior approved the Cherokee Tribal Code which expands jurisdiction in civil suits in the Court of Indian Offenses. In February 1999, Chief Appellate Judge Steven Philo found the Court of Indian Offenses has subject matter and personal jurisdiction over the action and Auto **Exhibit F, *attached to* Complaint.** No information has been provided concerning the present posture of the litigation except that it remains pending.

## II. DISCUSSION

In this action, Auto moved for a preliminary and permanent injunction and asked that any hearing on the preliminary injunction be consolidated with the trial on the merits. Although some explanation is necessary, in essence, Auto wants this Court to enjoin the Court of Indian Offenses. Instead, this Court must abstain from exercising any jurisdiction over this matter.

In 1981, the Bureau of Indian Affairs (BIA) authorized a Court of Indian Offenses for the Eastern Band of Cherokees. **The Cherokee Code of Tribal Ordinances (1992).** The Eastern Band continues to exercise its judicial system through a Court of Indian Offenses as opposed to a tribal court. **25 C.F.R. § 11.100(a)(8).** As a result, that court is, at least to some extent, bound by regulations enacted by the Bureau of Indian Affairs. **25 C.F.R. § 11.100(b) ("It is the purpose of the regulations in this part to provide adequate machinery for the administration of justice for Indian tribes in those areas of Indian country where tribes retain jurisdiction over Indians that is exclusive of state jurisdiction but where tribal courts have not been established to exercise that jurisdiction.").** And, those regulations provide that the Court of Indian Offenses has jurisdiction over civil matters between Indians and non-Indians brought by stipulation of the parties in that court. **25 C.F.R. § 11.103(a).** Nonetheless,

[t]he governing body of each tribe occupying the Indian country over which a Court of Indian Offenses has jurisdiction may enact ordinances which, *when approved by the Assistant Secretary—Indian Affairs* or his or her designee, shall be enforceable in the Court of Indian Offenses having jurisdiction over the Indian country occupied by that tribe, *and shall supersede any conflicting regulation in this part.*

**25 C.F.R. § 11.100(e) (emphasis added).** The Cherokee Code has expanded the jur-

isdiction of the Court of Indian Offenses to include jurisdiction over all persons in civil suits involving personal, property or legal rights of an Indian or Indian-owned business and in civil suits involving contract disputes where the contract was signed on Indian land. **The Cherokee Code of Tribal Ordinances, §§ 1–2(a) and 1–2(d).** But, Auto claims Saunooke has never proven the Code received BIA approval and thus, the Court of Indian Offenses is limited by the jurisdictional restrictions of the regulations.

However, the Appellate Court ruled that the Court of Indian Affairs did have jurisdiction over this action, rejecting the same argument Auto raises here. This case is virtually identical to a recent case in the Second Circuit involving the Mohawk Tribe. The parties were involved in a dispute concerning a gaming establishment on the reservation and the Tribal Court found it had jurisdiction to hear the case. *Basil Cook Enterprises, Inc. v. St. Regis Mohawk Tribe,* 117 F.3d 61 (2d Cir.1997). Nonetheless, the plaintiffs sought relief in federal court, including an injunction against further Tribal Court proceedings. The district court dismissed the case because the Tribal Court proceedings had not been exhausted and plaintiffs appealed claiming the Tribe had created its Tribal Court in contravention of tribal law.

> [Plaintiff's] arguments are bottomed on the same claim, namely, that the Tribal Court is a nullity because it was established in violation of the tribal constitution.
>
> ... [T]o hold that the St. Regis Mohawk Tribal Court is a nullity under the tribal constitution would require this court to construe tribal law. This we may not do. The Supreme Court has long recognized the exclusive responsibility of Native American tribes to construe their own law [ ] and with that responsibility

comes the parallel responsibility of federal courts to abide by those constructions [ ]. Federal courts, as a general matter, lack competence to decide matters of tribal law and for us to do so offends notions of comity underscored in *National Farmers [Union Ins. Cos. v. Crow Tribe of Indians,* 471 U.S. 845, 105 S.Ct. 2447, 85 L.Ed.2d 818 (1985) ] .... In this case, the availability of a remedy at tribal law is facially apparent: judicial recourse, encompassing a trial and an appeal, is provided for in the tribal constitution and, in this instance, the Tribal Court has taken papers and issued a decision holding that it has jurisdiction. In such circumstances, plaintiff must direct their arguments to the Tribal Court in the first instance.

*Id.,* at 66. This is precisely the case at hand. To grant the relief sought by the Plaintiff would require this Court to declare that the Court of Indian Offenses is and has been a nullity since 1981 when it was established. It would require a ruling by this Court that the Cherokee Tribe never received BIA approval of its Code. Obviously, this would be a construction of tribal law; indeed, it is hard to imagine an issue of greater construction of tribal law than the validity of its Code and court system.

As recently as this month, the Supreme Court has reiterated the exhaustion doctrine *albeit* in a case in which it found tribal courts should not litigate claims involving nuclear accidents under the federal Price–Anderson Act.[1] *El Paso Natural Gas Co. v. Neztsosie,* —— U.S. ——, 119 S.Ct. 1430, 143 L.Ed.2d 635 (1999).

> [A] federal court should stay its hand "until after the Tribal Court has had a full opportunity to determine its own jurisdiction." In justification of a prudential requirement of tribal exhaustion,

---

1. The Act provides original jurisdiction in the federal courts over any action involving nuclear accidents and further provides that an action filed in state court is immediately removable to federal court. The Supreme

Court found that Congress had inadvertently failed to include tribal courts along with state courts and held federal courts have a paramount interest in such litigation. That ruling in no manner impacts this case.

we stated that "the existence and extent of a tribal court's jurisdiction will require a careful examination of tribal sovereignty, the extent to which that sovereignty has been altered, divested, or diminished, as well as a detailed study of relevant statutes, Executive Branch policy as embodied in treaties and elsewhere, and administrative or judicial decisions." The same "considerations of comity," [ ] provided the rationale for extending the doctrine to cases where a defendant in tribal court asserts federal-diversity jurisdiction in a related action in district court. Exhaustion [is] appropriate ... because "Congress is committed to a policy of supporting tribal self-government ... [which] favors a rule that will provide the forum whose jurisdiction is being challenged the first opportunity to evaluate the factual and legal bases for the challenge."

*Id.,* at 1437 (**quoting** *National Farmers, supra* ) (**other citations omitted**). Such is the case at hand. Auto has a forum in the Court of Indian Offenses and this Court must abstain. ***See, also,*** *State of Montana v. Gilham,* 133 F.3d 1133 (9th Cir.1998) (**a case brought in federal court only after all tribal court remedies had been exhausted**); *United States v. Tsosie,* 92 F.3d 1037 (10th Cir.1996).

**IT IS, THEREFORE, ORDERED** that, for the foregoing reasons, the complaint is hereby **DISMISSED WITHOUT PREJUDICE.**