Edward A. JOSEPH, individually and on behalf of the Estate of his father, Nassef Joseph, and Marc Oddo, individually and on behalf of the Estate of his father, Nicholos Oddo, Plaintiffs,

v.

William H. SWEET, M.D. and Massachusetts General Hospital, Defendants.

No. CIV. A. 00–11026–WGY.

United States District Court, D. Massachusetts.

Dec. 18, 2000.

John K. McGuire, Jr., McGuire & McGuire, Worcester, MA, Anthony Z. Roisman, Hershenson, Carter, Scott & McGee, Norwich, VT, for plaintiffs.

Thomas P. Billings, Karen White Salon, Sally & Fitch, Boston, MA, Joseph L. Doherty, Jr., Martin, Magnuson, McCarthy & Kenney, Boston, MA, for defendant.

*MEMORANDUM AND ORDER*

YOUNG, Chief Judge.

## I. INTRODUCTION

The Defendants, William H. Sweet, M.D. ("Sweet") and Massachusetts General Hospital ("Mass General") request this Court to refer pertinent claims in this action to a medical malpractice tribunal convened pursuant to Mass. Gen. Laws ch. 231, § 60B. The Plaintiffs, Edward A. Joseph ("Joseph") and Marc Oddo ("Oddo"), contest the referral, claiming that it is inconsistent with the explicit goals of the Price Anderson Act. According to Joseph and Oddo, the otherwise applicable state law is preempted by the Price Anderson Act.

## II. FACTUAL BACKGROUND

This cause of action arises out of experiments conducted on individuals under the care of Sweet and Mass General in the 1950s and 1960s. A brief overview of the allegations, specifically the timing of the events, is helpful to the disposition of this matter.

Nassef Joseph was sixty-four at the time he was diagnosed with a brain tumor in March 1961. Compl. ¶ 9. He underwent a craniotomy on March 27, 1961 at Mass General. At that time he was injected with a toxic substance containing boron. Several weeks later, on April 18, 1961, Nassef Joseph was transported from Mass General to MIT where he underwent a second craniotomy during which he was injected with another boron compound. In addition, he was subjected to 105 minutes of slow neutron radiation. *Id.* ¶ 10. The neutron flux at the brain surface was allegedly the highest given to any patient. *Id.* He died on August 10, 1961. *Id.* ¶ 11. The autopsy, performed by Dr. Sweet, de-

termined the cause of death to be "extensive radiation necrosis of the brain." *Id.*

Nearly a decade earlier, on October 12, 1953, Nicholas Oddo, then 26, entered Mass General and was diagnosed with a brain tumor. *Id.* ¶ 14. Four days later, he underwent a craniotomy. On November 8, 1953, Nicholos Oddo was transferred to the services of Sweet to participate in studies on the toxicity of uranium and its distribution in the brain. *Id.* ¶ 15. As part of the study, Nicholas Oddo was injected with 5.5 mg of uranium. *Id.* The amounts administered to him produced a radiation dose in his bones twenty-one times higher than the maximum possible exposure rate for uranium. *Id.* ¶ 16. On November 13, 1953, two days after receiving the injection, Nicholos Oddo died. *Id.* ¶ 17.

The Plaintiffs claim that the actions of Sweet and Mass General caused substantial and unnecessary suffering to and hastened the deaths of Nicholas Oddo and Joseph Nassef. Sweet and Mass General, however, first want these actions to be assessed by a medical malpractice tribunal.

## III. DISCUSSION

### A. Medical Malpractice Tribunal

For the last three decades, pursuant to Mass. Gen. Laws ch. 231, § 60B, every medical malpractice action has to have been referred to a medical malpractice tribunal (the "tribunal"). The tribunal was established in 1975 as part of the Commonwealth's response to a perceived nationwide medical malpractice insurance crisis. According to the Supreme Judicial Court, the statute was adopted "as part of a comprehensive package designed to ensure the continued availability of medical malpractice insurance at a reasonable cost." *Austin v. Boston Univ. Hosp.*, 372 Mass. 654, 655 n. 4, 363 N.E.2d 515 (1977). The purpose of the tribunal is to distinguish between "unfortunate medical results" and judicially cognizable claims of medical malpractice. Essentially, it is an initial screen, derailing claims with no legal merit from clogging already congested civil court dockets and increasing litigation costs.

The tribunal consists of a single justice of the Superior Court, a physician, and an attorney authorized to practice in the Commonwealth. Mass. Gen. Laws ch. 231, § 60B (1999). At the hearing before the tribunal, the plaintiff is required to make an offer of proof of the evidence supporting her claim. *Id.* After presentation of the evidence, the tribunal determines whether "the evidence presented if properly substantiated is sufficient to raise a legitimate question of liability appropriate for judicial inquiry or whether the plaintiff's case is merely an unfortunate medical result." *Id.*

It is important to note that regardless of the tribunal's decision, the plaintiff is free to maintain an action in court. While the purpose of the tribunal is to filter out "frivolous" claims, the tribunal does not have the power to render a final decision on the merits of the case. If the tribunal determines that the plaintiffs' case is merely an unfortunate medical result, however, the plaintiff is required to file a $6,000 bond with the clerk of the court.[1] *Id.* The bond is payable to the defendant for trial costs in the event the plaintiff does not prevail in the final judgment. If the bond is not posted within thirty days of the tribunal's decision, the statute requires that the "action shall be dismissed." *Id.*

It is well established that the Rules of Decision Act requires a federal court sitting in diversity to apply the state statute at issue here. *See Feinstein v. Mass. Gen. Hosp.*, 643 F.2d 880, 885 (1st Cir.1981). *But see Seck v. Hamrang*, 657 F.Supp. 1074, 1076–77 (S.D.N.Y.1987) (refusing to apply similar state law when sitting in diversity). There is, however, one caveat. The statute need not be followed if there is an "overriding federal interest in not ap-

---

1. The bond may be reduced by the court upon a showing of indigency.

plying the statute." *Feinstein*, 643 F.2d at 885. This is the hook on which Joseph and Oddo hang their argument. They claim that referral of this case to the tribunal is inconsistent with the Price Anderson Act (the "Act"), and as a result, the state statute is inapplicable to this case. A review of the Act is essential to determine if it establishes the necessary "overriding federal interest."

## B. Price Anderson Act

The Act was adopted in 1957 to encourage the commercial development of nuclear energy by establishing a public-private insurance pool to cover potential damages arising from nuclear occurrences. *Duke Power Co. v. Carolina Env. Study Group, Inc.*, 438 U.S. 59, 63–65, 98 S.Ct. 2620, 57 L.Ed.2d 595 (1978); *Heinrich v. Sweet*, 62 F.Supp.2d 282, 296 (D.Mass.1999). The Act requires that operators of nuclear power facilities obtain liability insurance from private sources and provides a supplementary federal indemnity guarantee of $500,000,000. *Smith v. Gen. Elec. Co.*, 938 F.Supp. 70, 73 (D.Mass.1996) (Stearns, J.).

■ In 1988, Congress amended the Act explicitly to declare that a "public liability action"[2] was a federal cause of action falling under the original and removal jurisdiction of the federal courts. 42 U.S.C. § 2210(n)(2). Specifically, the amended Act provides a federal regulatory scheme for all public liability actions that allege bodily injury resulting from radioactive or other hazardous properties of federally regulated nuclear materials. *Id.* §§ 2210(3)(A), 2014(hh). Although the

1988 amendments create a federal cause of action, the Act incorporates the "substantive rules for decision" from state law "unless such law is inconsistent with the provisions of such section." *Id.* § 2014(hh).

The question here presented is whether Mass. Gen. Laws ch. 231, § 60B is inconsistent with the provisions of the Act. Before this can be addressed, however, the Court must determine the threshold issue of whether the Act even applies to these claims.

### 1. Does the Act Apply?

For purposes of this analysis, the claims of Joseph and Oddo must be addressed separately.

■ All parties agree that Joseph's claim is covered by the Act. In a previous ruling, with circumstances factually similar to those presented by Joseph, this Court ruled that the prerequisite for a claim to fall within the scope of the Act was the existence of an indemnification agreement between the government and the defendant with respect to the complained of activity. *Heinrich*, 62 F.Supp.2d at 296–97 (citing *Gilberg v. Stepan Co.*, 24 F.Supp.2d 325, 340 [D.N.J.], *supplemented by* 24 F.Supp.2d 355 [D.N.J.1998]). It is undisputed here that there is an indemnification agreement covering the complained of activity. Thus, for purposes of this motion, it is assumed that Joseph's claim fits within the purview of the Act and is governed by § 2014(hh).[3]

■ Oddo's claim differs. His treatment and death occurred in 1953, four

---

**2.** "The term 'public liability action' means any legal liability arising out of or resulting from a nuclear incident ...." 42 U.S.C. § 2014(w).

**3.** While it has been established that an indemnification agreement is necessary for the claim to fall within the scope of the Act, it is not sufficient. The claim must also fit the other requirements of the Act, specifically that the claim involve a "nuclear incident." Unfortunately, "nuclear incident" is not defined in the Act and courts have arrived at varying

interpretations. *Compare Gilberg*, 24 F.Supp.2d at 332, *with In re Cincinnati Radiation Litig.*, 874 F.Supp. 796, 831 (S.D.Ohio 1995). There is some dispute as to whether the Act was intended to cover nuclear medicine. Neither party raises this argument, however. Moreover, in a previous ruling this Court was unpersuaded that nuclear medicine is precluded per se from a "public liability action" under the Act. *Heinrich*, 62 F.Supp.2d at 298 n. 1. Thus, here, an indemnification agreement remains the determinative factor.

years prior to the adoption of the Act. Moreover, there is no record of an indemnification agreement between the government and Sweet and Mass General.[4] As already discussed, an indemnification agreement is an essential ingredient of a claim under the Act. Thus, unlike Joseph, Oddo cannot rely on the potential protections of the Act to avoid the tribunal. Oddo's claim must be referred to the tribunal as mandated by Mass. Gen. Laws ch. 231, § 60B.

### 2. Is the Tribunal Inconsistent with the Act?

■ This is the gravamen that remains as to Joseph. Relying on the Supreme Court's decision in *El Paso Natural Gas Co. v. Neztsosie*, 526 U.S. 473, 119 S.Ct. 1430, 143 L.Ed.2d 635 (1999), Joseph argues that a claim under the Act is to be decided exclusively in federal court. Consequently, a referral to the tribunal pursuant to state law is inconsistent with the explicit goal of the Act.

Joseph's reliance on *Neztsosie* is misplaced, however. The dispute in *Neztsosie* did not present the question that arises here. In *Neztsosie*, both the district and appeals courts had allowed a tribal court to determine whether the plaintiff's claims fell within the scope of the Act. *Id.* at 478, 119 S.Ct. 1430. The Supreme Court reversed, stating "Congress expressed an unmistakable preference for a federal forum, at the behest of the defending party, both for litigating a Price–Anderson claim on the merits and for determining whether the claim falls under Price–Anderson when removal is contested." *Id.* at 484–85, 119 S.Ct. 1430. Thus, it was for the district court and not the tribal court to determine if the Act applied to the claims. Under usual circumstances both state and tribal

courts are considered competent to decide federal questions. *Id.* at 485 n. 7, 119 S.Ct. 1430. The Court noted, however, that "[t]he situation here is the rare one [of] express congressional preference for a federal forum." *Id.*

In contrast, here, the tribunal will decide neither the existence of a Price–Anderson claim nor the merits of the case. The tribunal is simply a screening mechanism put in place to keep medical malpractice costs down. If a decision is rendered for Sweet or Mass General, Joseph is not precluded from litigating his case in front of this Court. Assuming he survives to trial, his case will be heard by a jury of his peers. At a maximum, he will need to post a bond.[5] Moreover, at no point does the tribunal exercise "jurisdiction" over the case. In this instance, "jurisdiction" refers to the Court's power to decide a case. While the tribunal renders a decision, it is not a legally binding judgment; only this Court has the power to render such a judgment. Thus, at no time is there dual jurisdiction as alleged by Joseph.

■ Joseph makes two additional arguments. First, he contends that the bond provision of the statute discourages plaintiffs from pursuing Price–Anderson claims and is here contrary to the Act's goal of providing full and adequate compensation to all injured parties. The Court is unpersuaded by this argument. It is unlikely that a plaintiff, allegedly injured in a "nuclear incident," would forego seeking judicial redress because of the potential bond requirement. Moreover, the statute allows for reduction of the bond by a Justice of the Superior Court. Mass. Gen. Laws ch. 231, § 60B. Nor does the posting of the bond defeat the goal of full and adequate compensation. If the plaintiff prevails at

---

**4.** Sweet and Mass General continue to search for such an agreement.

**5.** If Joseph is required to do so and fails to post the bond within thirty days of the tribunal's decision, the statute requires the action to be dismissed. This provision of the statute

raises an interesting question: whether the mandated dismissal is inconsistent with the Price Anderson Act and the federal courts' original jurisdiction. This question, however, is not currently before the Court.

trial she will be awarded appropriate damages and recover the bond.

Second, Joseph argues that the additional hearing and the resulting delay caused by a referral is inconsistent with "the congressional aims of speed and efficiency." *Neztsosie,* 526 U.S. at 486, 119 S.Ct. 1430. The legislative history suggests that Congress was concerned with "the multitude of separate cases brought 'in various state and Federal courts' in the aftermath of the Three Mile Island accident." *Id.* (citing S.Rep. No. 100–218, at 13 [1987], U.S.Code Cong. & Admin.News 1988, p. 1476). To avoid this problem, Congress provided " 'for consolidation of claims in the event of a nuclear incident' " to defeat " 'the inefficiencies resulting from duplicative determinations of similar issues in multiple jurisdictions.' " *Id.* (quoting S.Rep. No. 100–218, at B). It would stretch the bounds of congressional intent to apply this goal to the facts of this case. This case is not one of a "multitude" inundating the courts. The tribunal is neither a "multiple jurisdiction," nor is its decision a "duplicative determination."

The Court is cognizant of the fact, however, that the time between referral to the tribunal and its final decision can be quite lengthy. While the statute mandates that "the action for malpractice shall be heard by said tribunal within fifteen days after the defendant's answer has been filed," Mass. Gen. Laws ch. 231, § 60B, this is not always the case. *See* Mark A. Cohen, *Movement to Abolish Med–Mal Tribunals: Unnecessary Hurdles or Important Filter?,* Mass. Law. Wkly., June 2, 1997, at 1 (despite fifteen day statutory mandate, "hearing typically does not occur for several months"). In at least one instance, there was an "inexplicable" twenty-five month delay before the tribunal was convened. *See O'Leary v. Nepomuceno,* 44 Mass.App.Ct. 683, 686, 693 N.E.2d 701 (1998) (upholding lower court's ruling to allow discovery to proceed although tribunal had not convened); *see also Todisco v. Pesin,* No. 927488, 1995 WL 1146841, at \*1 (Mass.Super.Nov.21, 1995) (noting that the case was filed in 1992 and the tribunal convened in May 1993); *Schell v. Birnbaum,* No. 9224832J, 1994 WL 878922, at \*2–\*3 (Mass.Super.Nov.28, 1994) (noting that the answer was filed in July 1984 and the case was referred to the tribunal in July 1985).

The threat of delay, while troublesome, is insufficient to preempt the entire state statute, however. Any anticipated delays are speculative at this point. Indeed, the case has not yet been set for trial. Moreover, the Court trusts that in the vast majority of cases, the system works with moderate efficiency. Any undue delays can be ameliorated by an order allowing discovery to proceed.

## IV. CONCLUSION

Joseph has failed to convince this Court that Mass. Gen. Laws ch. 231, § 60B is inconsistent with the provisions of the Price Anderson Act. Consequently, Defendants Motion to Refer Claims to Medical Malpractice Tribunal is GRANTED. [docket no. 8]