KATZMANN, Circuit Judge,
concurring in part and concurring in judgment in part:
I join the judgment of the court vacating the dismissal on tribal exhaustion grounds, but w'ould reach this result in a different way. Similarly, I agree with the court’s reasoning and conclusions regarding the alleged sovereign immunity waiver in the ordinance creating the tribal housing authority, but write separately to express some concerns arising from the particular facts of this case. I concur fully in the thoughtful majority opinion in all other respects.
With regard to the tribal exhaustion issue, I would hold that the plaintiff should not have to exhaust her claims in Tribal Court because the defendants have not asserted that a Tribal Court as such exists. Exhaustion would thus be futile. See Iowa Mut. Ins. Co. v. LaPlante, 480 U.S. 9, 19 n. 12, 107 S.Ct. 971, 94 L.Ed.2d 10 (1987) (recognizing the futility exception to the tribal exhaustion rule). The defendants seek remand to the Tribal Council (the tribe’s legislative body) by asserting that this body is and has always been the tribe’s judicial forum as well. As detailed above, see supra § I.C.l, the accuracy of *89 this representation is open to debate, to say the least. The question whether a Tribal Court exists is analytically prior to the question whether Tribal Court exhaustion is required in any given case. Since the defendants do not contend that there exists a Tribal Court as such at this time, we should vacate the dismissal without reaching the exhaustion issue.
The federal circuits which adjudicate the majority of the Indian law eases in this country have all held that the necessity of tribal exhaustion does not turn on whether a case is also pending in Tribal Court. See, e.g., Duncan Energy Co. v. Three Affiliated Tribes, 27 F.3d 1294, 1299-1301 (8th Cir.1994), cert. denied, 513 U.S. 1103, 115 S.Ct. 779, 130 L.Edüd 673 (1995); Texaco, Inc. v. Zah, 5 F.3d 1374, 1376 (10th Cir.1993); Burlington Northern R. R. v. Crow Tribal Council, 940 F.2d 1239, 1246 (9th Cir.1991); see also Ninigret Dev. Corp. v. Narragansett Indian Wetuomuck Housing Auth., 207 F.3d 21, 31 (1st Cir. 2000). These circuits all hold that if a suit is arguably within the jurisdiction of the Tribal Court, it must first be filed in Tribal Court.
I agree that the Supreme Court’s exhaustion case law does not mandate this position, but it certainly does not mandate the holding of the majority opinion either. Lacking any controlling Supreme Court precedent, we must be guided by the policies underlying the tribal exhaustion doctrine. I would not condition exhaustion on what could effectively be a race to the courthouse or the ability of a potential defendant to anticipate litigation and craft a ripe claim for declaratory relief. These grounds appear to me to be quite different from the policies underlying the exhaustion doctrine, which are respecting tribal sovereignty, promoting tribal self-gover-nanee, and receiving the benefits of Tribal Court expertise with tribal law. See El Paso Natural Gas v. Neztsosie, 526 U.S. 473, 483-84, 119 S.Ct. 1430, 143 L.Ed.2d 635 (1999); Strate v. A-1 Contractors, 520 U.S. 438, 450-51, 117 S.Ct. 1404, 137 L.Ed.2d 661 (1997); LaPlante, 480 U.S. at 14-15, 107 S.Ct. 971; National Farmers Union Ins. Cos. v. Crow Tribe, 471 U.S. 845, 856-57, 105 S.Ct. 2447, 85 L.Ed.2d 818 (1985).
Nor am I convinced of the weight to be given to the fact that this case involves a non-tribal plaintiff. See supra § I.C.2. The St. Regis Mohawk tribe would have legislative and adjudicatory jurisdiction over this case because it involves actions by the Tribal Council and a tribal official on tribal land concerning a business agreement entered into with a tribal agency. See Ninigret, 207 F.3d at 32-33; see also Nevada v. Hicks, 533 U.S. 353,-n. 3, 121 S.Ct. 2304, 2310 n. 3, 150 L.Ed.2d 398 (2001) (tribes have jurisdiction over nonmembers who enter into consensual relationships with the tribe or its members); Atkinson Trading Co. v. Shirley, 532 U.S. 645, 121 S.Ct. 1825, 1832-33, 149 L.Ed.2d 889 (2001) (same); Strate, 520 U.S. at 457, 117 S.Ct. 1404 (a business contract qualifies as a “consensual relationship”). I also do not grasp the particular relevance in this case of the fact that non-tribal law is involved. See supra § I.C.3. “[T]he [exhaustion] doctrine applies even though the contested claims are to be defined substantively by state or federal law.” Ninigret, 207 F.3d at 31. El Paso’s discussion is not controlling here because that ease involved a uniquely important federal interest and clear Congressional preference for a federal forum. In the usual case, Tribal Courts are competent to decide state and federal law claims. See El Paso Natural Gas, 526 U.S. at 485 n. 7, 119 S.Ct. 1430; Altheimer & Gray v. Sioux Manuf. Corp., 983 F.2d 803, 814 (7th Cir.), cert. denied, 510 U.S. 1019, 114 S.Ct. 621, 126 L.Ed.2d 585 (1993). This dispute falls within tribal jur *90 isdiction and exhaustion should therefore be required. I would prefer to avoid deciding the issue in the manner accomplished by the majority opinion and instead vacate the district court’s dismissal on exhaustion grounds simply on the basis that the defendants do not contend that a Tribal Court as such presently exists.
Turning to sovereign immunity, I recognize the fundamental soundness of the general legal propositions expounded by the court above. See supra § II.A.2. Going forward from this point in time, the court’s reading of the tribal ordinance on sovereign immunity should be fair and workable. Employees of the housing authority, and individuals and entities doing business with it, are now on notice that the tribe has only waived sovereign immunity for suit in tribal forums, such as they are. Any additional waiver granting the right to sue in federal court will have to be negotiated in advance with the tribe.
However, the particular facts of this case raise some concerns. Limitation to suit in tribal forums is adequate in theory, but the specific history of the St. Regis Mohawk judicial system complicates the issue. Apparently — accepting the defendants’ representations made in their brief to this court — the sole tribal forum which can hear a legal claim at present is the Tribal Council. When, as in this case, actions of this Tribal Council form part of the factual predicate of a plaintiffs tort claim against the housing authority, it is somewhat troubling to require litigation to be pursued only in that forum. The history of the St. Regis Mohawk Tribal Court is complicating in an additional way. Since it appears that — whatever its status now— the Tribal Court was not created until 1996 or 1997, it is a little awkward to read the “sue and be sued” ordinance (passed by the Tribal Council in 1984) as a waiver of sovereign immunity only in (apparently yet-to-be-envisioned-or-created) Tribal Courts. Although I ultimately agree with the majority that the 1984 ordinance effected a waiver for suit only before the Tribal Council, this explanation is not entirely satisfactory. Manifestly, the HUD-mandated regulations for setting up a tribal housing authority and the St. Regis Mohawk ordinance based explicitly upon those regulations were intended to institute a legally responsible corporate entity to facilitate business dealings on and off reservation. “Consent to limited suit against a reservation-created housing authority may be inherent in th[is] federal program, in light of the fact that developers and lenders will be reluctant to deal with a corporation which is legally irresponsible and cannot be made to answer for its debts.” Namekagon Development Co., Inc. v. Bois Forte Reservation Housing Auth., 395 F.Supp. 23, 29 (D.Minn.1974), aff'd, 517 F.2d 508 (8th Cir.1975). If this is so, one could argue that the waiver was intended to be broader and more protective of non-tribal persons and businesses, encompassing suits in federal court. However, the parties have not pursued this issue in their briefs and have not provided us with any materials which might illuminate the intent of Congress, HUD or the tribe. In the absence of such illumination, and because the court’s interpretation of the tribal ordinance should in the future be fair and workable, I join the court’s opinion.