NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois  60604**

Argued February 22, 2007
Decided March 12, 2007

**Before**

Hon. RICHARD D. CUDAHY, *Circuit Judge*

Hon. KENNETH F. RIPPLE, *Circuit Judge*

Hon. DIANE P. WOOD, *Circuit Judge*

No. 06-3090

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee,* | Appeal from the United States District Court for the Central District of Illinois |
| *v.* | No. 04-10078-001 |
| JAMES L. GOLDMAN, *Defendant-Appellant.* | Michael M. Mihm, *Judge.* |

**O R D E R**

James Goldman agreed to plead guilty to conspiring to manufacture methamphetamine, 21 U.S.C. §§ 841(b)(1)(A), 846.  Based on the weight of the drugs Goldman manufactured, the district court determined that he was subject to a 240-month mandatory minimum sentence. See 21 U.S.C. § 841(b)(1)(viii). On appeal, Goldman challenges the district court's calculation of the drug weight, arguing that the court should not have relied on speculative testimony from the government's expert witness. We conclude that the court did not commit clear error in its calculations and that its credibility determinations were within its discretion. We therefore affirm.

**I**

Between 2000 and 2003, Goldman taught several others how to produce methamphetamine and managed an operation manufacturing the drug. Goldman agreed to plead guilty to conspiring to manufacture methamphetamine, but he reserved the right to challenge the calculation of the drug weight. During the police investigation, one of Goldman's coconspirators admitted that the group manufactured methamphetamine approximately twice a week for four or five months, producing an ounce (approximately 28 grams) of the drug each time. Based on this information, the probation officer estimated in the presentence investigation report that the conspiracy was accountable for producing 907 grams of methamphetamine. Goldman objected to this result, arguing that the probation officer's calculation relied on speculation about production methods.

At the sentencing hearing, Dr. Terry Martinez, an expert in toxicology, testified on Goldman's behalf that the government's computation of the drug weight was too high because it did not account for lower yields resulting from poor technique at "clandestine laboratories" like Goldman's. Conducting his own calculations based on information from the police investigations, Martinez determined that Goldman manufactured methamphetamine 38 times using pseudoephedrine pills and that the number of pseudoephedrine pills that Goldman used would yield nine to 17 grams of a methamphetamine mixture each time. Martinez therefore calculated that Goldman produced a total of between 270 and 646 grams of the mixture. (Martinez incorrectly stated that nine grams of methamphetamine mixture manufactured 38 times would yield 270 grams of the mixture at the low end. Unless he meant that there would be some loss in the process, however, 38 batches of nine grams each amounts to 342 grams. This discrepancy does not affect the final sentencing calculation, however. Either way, the mixture contained more than 50 grams of actual methamphetamine, which is the trigger point for the statutory minimum sentence and the applicable base offense level in the guidelines. See 21 U.S.C. § 841(b)(viii); U.S.S.G. § 2D1.1(c)(4).) Martinez also testified that he could not be sure how diluted the methamphetamine was in the actual mixtures that Goldman produced, but that mixtures produced at clandestine laboratories have been found to be 30 to 92% pure. His ultimate conclusion was that Goldman produced a minimum of 270 grams of a mixture that consisted of 30% methamphetamine. This, he said, resulted in 87 grams of actual methamphetamine. (Again, it seems that the number should be 81 grams; this too makes no difference to the outcome here.)

The government's forensic chemist testified that Martinez's calculations were based on an estimate of the lowest possible yield of methamphetamine from the pills that Goldman used. He suggested that the calculation of the weight of the methamphetamine was higher in the presentence report because the government assumed that the final mixture of methamphetamine was 100% pure. The expert also testified that Goldman probably produced much more methamphetamine than either

Martinez or the presentence report calculated because both calculations were based on production from one location, but Goldman was in fact producing the drug at two locations. The expert therefore calculated that Goldman was responsible for producing more than 1,600 grams of a mixture containing methamphetamine.

Based on both of the experts' testimony, the district court denied Goldman's objection to the computation of the drug weight. The court found that the evidence established that Goldman produced a substance containing more than 500 grams of a mixture containing methamphetamine. In the alternative, the court ruled that even accepting Martinez's figures, Goldman had produced more than 50 grams of pure methamphetamine. Using this drug weight, the court calculated a guidelines range of 262 to 327 months' imprisonment. The court also determined that Goldman's sentence was controlled by 21 U.S.C. § 841(b)(1)(A)(viii), which mandates a 20-year minimum sentence when the defendant manufactured 50 or more grams of methamphetamine or 500 or more grams of a substance containing methamphetamine and continued the conspiracy after being arrested for an earlier drug offense. The court sentenced Goldman to 224 months' imprisonment (38 months below the guidelines range, and 16 months below the mandatory minimum) to account for time he had already served in state prison. (We see no authority here for the court to reduce the sentence below the mandatory minimum, see *United States v. Simpson*, 337 F.3d 905, 909 (7th Cir. 2003), but the government did not object in the district court and did not cross-appeal this issue, see *United States v. Leahy*, 464 F.3d 773, 790 (7th Cir. 2006). We therefore cannot disturb the sentence in a way that favors the government. See *El Paso Natural Gas Co. v. Neztsosie,* 526 U.S. 479-82 (1999); *United States v. Rivera,* 411 F.3d 864, 867 (7th Cir. 2005).)

## II

Goldman argues on appeal that the district court erred by relying on unsupported expert testimony when it calculated the drug weight. He contends that the testimony of the government's forensic chemist was unsupported because the government failed to measure the actual purity of the substance that Goldman manufactured. Aside from a brief comment by counsel at oral argument, however, he has not explained why a properly-calculated weight would affect his sentence.

We review a challenge to the district court's calculation of drug weight for sentencing purposes for clear error; we will not overturn its finding unless we firmly believe the court made a mistake. *United States v. Romero*, 469 F.3d 1139, 1147 (7th Cir. 2006). The court's factual findings must be based on reliable evidence, not speculation, and they must be supported by a preponderance of that evidence. *Id.* at 1146. The court may estimate the drug weight by relying on information in the presentence report and witness testimony. *Id.* at 1147; *cf. United States v. Noble*, 246 F.3d 946, 952 (7th Cir. 2001).

The government urges, correctly, that the testimony of its own expert is irrelevant at this point to the issue before us. While Martinez testified that he did not know the exact quantity of methamphetamine in the mixture that Goldman manufactured, he was able to estimate a range based on information in the police investigations and a study from the Drug Enforcement Administration that reported drug yields in clandestine laboratories. Martinez himself imputed to Goldman at least 81 grams of actual methamphetamine based on his calculation that Goldman produced more than 270 grams of a mixture containing at least 30% actual methamphetamine. That is enough by itself to dispose of Goldman's appeal.

We add that the government devoted most of its brief to proposing an alternate method for calculating the guidelines range. Under a 2003 amendment to the guidelines, the court now need only consult "Drug Equivalency Tables" to decide how much methamphetamine resulted from a given amount of pseudoephedrine. See U.S.S.G., App. C, Amendment 611; U.S.S.G. § 2D1.1 cmt. 10. If the district court here had used the equivalency tables, it would have arrived at the same base offense level for Goldman, even without relying on the experts' testimony. We note, however, that this table applies only to guidelines calculations, not to the determination of amounts that trigger statutory minima. In this case, therefore, it was still necessary for the court to compute the actual amounts of the mixture or the pure drug to determine the statutory minimum sentence.

Because the district court's calculation of the drug weight was supported by credible expert testimony, we AFFIRM the sentence.