**BANK ONE, N.A., Plaintiff,**

v.

**Brainard LEWIS, Defendant.**

**CIV. A. No. 4:00CV132LN.**

United States District Court,
S.D. Mississippi,
Eastern Division.

Feb. 20, 2001.

William H. Leech, Mark H. Tyson, McGlinchey Stafford, Jackson, MS, for Plaintiff or Petitioner.

Roman A. Shaul, Beasley, Allen, Crow, Methvin, Portis & Miles, Montgomery, AL, C. Bryant Rogers, Roth, VanAmberg, Rogers, Ortiz, Fairbanks & Yepa, LLP, Santa Fe, NM, Brian D. Dover, Jordan & Dover, Philadelphia, PA, for Defendant.

## MEMORANDUM OPINION AND ORDER

LEE, District Judge.

Defendant Brainard Lewis has filed a motion to remand or, alternatively, dismiss on the basis of the tribal exhaustion doctrine, which motion is opposed by plaintiff Bank One, N.A. Having considered the memoranda of authorities, together with attachments, submitted by the parties, the court concludes that the tribal exhaustion doctrine does apply, and that therefore, this case should be dismissed.

The facts pertinent to the present motion are, briefly, as follows. On July 11, 2000, defendant, a duly enrolled member of the Mississippi Band of Choctaw Indians, filed suit against Bank One in the Tribal Court of the Mississippi Band of Choctaw Indians (Tribal Court) seeking damages and injunctive relief based on allegations of improper conduct on the part of Bank One in connection with its financing of a home satellite system purchased by defendant. Specifically, defendant alleged that in March 1995, when a door-to-door salesman came to his home on the Choctaw Indian Reservation attempting to sell him a home satellite system, he agreed to purchase the system based on the salesman's representations as to the cost and terms of financing. He charged, however, that the representations were false and fraudulent, and contended, more particularly, that Bank One, financed the transaction through a "bogus" credit card, and that it concealed and fraudulently failed to disclose material information regarding the credit transaction, including the nature of the credit, the number of payments, the amount of each payment, the amount financed, the total finance

charge, the total of payments and the total sales price.

Upon receiving notice of the Tribal Court action, Bank One promptly filed its complaint in this court under § 4 of the Federal Arbitration Act (FAA), 9 U.S.C. § 4, seeking to compel arbitration of defendant's claims, asserting that the claims advanced by defendant against Bank One in Tribal Court are subject to a valid and binding arbitration agreement which is a part of defendant's credit card agreement with Bank One. Immediately upon being served with process in this action, defendant moved the court to dismiss the case, or to remand it to Tribal Court, to which subject matter jurisdiction is clearly conferred by the Choctaw Tribal Code, § 1–2–5 2, since he is a duly enrolled member of the Mississippi Band of Choctaw Indians and lives within the exterior boundaries of the Choctaw Indian Reservation, and since the claims giving rise to his cause of action against Bank One occurred wholly within the exterior boundaries of the Choctaw Indian Reservation. Defendant submits that if there were any doubt as to the Tribal Court's jurisdiction, then pursuant to the tribal exhaustion doctrine, this court would be obliged to allow the Tribal Court to have the first opportunity to rule on the question of its jurisdiction. The court agrees, and concludes that the case should be dismissed so that the parties may present their positions for consideration by the Tribal Court.

■ Under the tribal exhaustion rule, as formulated by the Supreme Court in *National Farmers Union Insurance Co. v. Crow Tribe*, 471 U.S. 845, 105 S.Ct. 2447, 85 L.Ed.2d 818 (1985), and *Iowa Mutual Insurance Co. v. LaPlante*, 480 U.S. 9, 107 S.Ct. 971, 94 L.Ed.2d 10 (1987), "when a colorable claim of tribal court jurisdiction has been asserted, a federal court may (and ordinarily should) give the tribal court precedence and afford it a full and fair opportunity to determine the extent of its own jurisdiction over a particular claim or set of claims." *Ninigret Dev. Corp. v. Narragansett Indian Wetuomuck Housing Auth.*, 207 F.3d 21, 31 (1st Cir.2000); *see also Bowen v. Doyle*, 230 F.3d 525, 529 (2d Cir.2000) ("when the jurisdiction of the tribal court is challenged, 'the Tribal Court itself' must be permitted to determine the issue 'in the first instance.'") (quoting *National Farmers*, 471 U.S. at 855, 105 S.Ct. 2447, 85 L.Ed.2d 818); *Basil Cook Enters., Inc. v. St. Regis Mohawk Tribe*, 117 F.3d 61, 65 (2d Cir.1997) (under the doctrine of exhaustion of tribal remedies, "parties who challenge, under federal law, the jurisdiction of a tribal court to entertain a cause of action must first present their claim to the tribal court before seeking to defeat tribal jurisdiction in any collateral or parallel federal court proceeding.").

■ The tribal exhaustion requirement is not jurisdictional, but rather is a "prudential" rule pursuant to which a federal court, in view of comity considerations, "should to stay its hand 'until after the Tribal Court has had a full opportunity to determine its own jurisdiction.'" *Strate v. A–1 Contractors*, 520 U.S. 438, 449, 117 S.Ct. 1404, 1411, 137 L.Ed.2d 661 (1997) (quoting *National Farmers*, 471 U.S. at 857, 105 S.Ct. at 2454); *Iowa Mutual*, 480 U.S. at 16 n. 8, 107 S.Ct. at 976 n. 8 (stating that "[e]xhaustion is required as a matter of comity, not as a jurisdictional prerequisite"). This rule is based on "the Federal Government's longstanding policy of encouraging tribal self-government," *Iowa Mutual*, 480 U.S. at 14, 107 S.Ct. at 975, and "reflects the fact that Indian tribes retain 'attributes of sovereignty over both their members and their territory' to the extent that sovereignty has not been withdrawn by federal statute or treaty," *id*, at 14, 107 S.Ct. at 975 quoting *United*

*States v. Mazurie*, 419 U.S. 544, 557, 95 S.Ct. 710, 42 L.Ed.2d 706 (1975); *see also National Farmers*, 471 U.S. at 856, 105 S.Ct. at 2454 ("Our cases have often recognized that Congress is committed to a policy of supporting tribal self-government and self-determination."). Thus, while the federal courts ultimately have jurisdiction to determine the limits of a tribal court's jurisdiction, the tribal exhaustion rule holds that tribal courts, which "play a vital role in tribal self-government," must be permitted the first opportunity to resolve challenges to their jurisdiction without federal court interference.[1] *Iowa Mutual*, 480 U.S. at 14, 107 S.Ct. at 976; *Strate*, 520 U.S. at 451, 117 S.Ct. at 1412 (Court in *Iowa Mutual* held that "[r]espect for tribal self-government made it appropriate 'to give the tribal court a full opportunity to determine its own jurisdiction.'"); *Basil Cook Enters.*, 117 F.3d at 65 (noting that the exhaustion requirement "promotes tribal autonomy and dignity"). This is so

whether the federal court's jurisdiction is sought to be invoked on the basis of a federal question under 28 U.S.C. § 1331, or diversity of citizenship under § 1332. *See Strate*, 520 U.S. at 451, 117 S.Ct. at 1412 (respect for tribal self-government "[is] equally in order whether federal-court jurisdiction rest[s] on § 1331 (federal question) or on § 1332 (diversity of citizenship)"); *Iowa Mutual*, 480 U.S. at 16, 107 S.Ct. at 976 ("In diversity cases, as well as federal-question cases, unconditional access to the federal forum would place it in direct competition with the tribal courts, thereby impairing the latter's authority over reservation affairs."); *Tillett v. Lujan*, 931 F.2d 636, 640 (10th Cir.1991) (tribal exhaustion rule provides that "as a matter of comity, a federal court should not exercise jurisdiction over cases arising under its federal question or diversity jurisdiction, if those cases are also subject to tribal jurisdiction, until the parties have exhausted their tribal remedies.").[2]

1. The Court in *National Farmers* held that "[t]he question whether an Indian tribe retains the power to compel a non-Indian property owner to submit to the civil jurisdiction of a tribal court is one that must be answered by reference to federal law and is a 'federal question' under § 1331." *National Farmers*, 471 U.S. at 852–53, 105 S.Ct. at 2452 ("The District Court correctly concluded that a federal court may determine under § 1331 whether a tribal court has exceeded the lawful limits of its jurisdiction.").

2. The Supreme Court most recently addressed the tribal exhaustion doctrine in *El Paso Natural Gas Co. v. Neztsosie*, 526 U.S. 473, 483–84, 119 S.Ct. 1430, 1436–37, 143 L.Ed.2d 635 (1999), and summarized its earlier decisions on the subject, as follows:

> *National Farmers Union Ins. Cos. v. Crow Tribe*, 471 U.S. 845, 105 S.Ct. 2447, 85 L.Ed.2d 818 (1985), was a suit involving the federal-question jurisdiction of a United States District Court under 28 U.S.C. § 1331, brought to determine "whether a tribal court has the power to exercise civil

subject-matter jurisdiction over non-Indians," *id.*, at 855, 471 U.S. 845, 105 S.Ct. 2447, 85 L.Ed.2d 818. We held, initially, that federal courts have authority to determine, as a matter "arising under" federal law, *see* 28 U.S.C. § 1331, whether a tribal court has exceeded the limits of its jurisdiction. *See* 471 U.S., at 852–853, 105 S.Ct. 2447. After concluding that federal courts have subject-matter jurisdiction to entertain such a case, we announced that, prudentially, a federal court should stay its hand "until after the Tribal Court has had a full opportunity to determine its own jurisdiction." *Id.*, at 857, 105 S.Ct. 2447, 471 U.S. 845, 105 S.Ct. 2447, 85 L.Ed.2d 818. In justification of a prudential requirement of tribal exhaustion, we stated that "the existence and extent of a tribal court's jurisdiction will require a careful examination of tribal sovereignty, the extent to which that sovereignty has been altered, divested, or diminished, as well as a detailed study of relevant statutes, Executive Branch policy as embodied in treaties and elsewhere, and administrative or judicial decisions," *id.*, at 855–856, 471 U.S. 845, 105 S.Ct. 2447, 85

The tribal exhaustion doctrine is, not, however, applicable to every case to which a tribe or a tribe member is a party, and thus it must be determined whether the circumstances of this case are such as to invoke the requirement of tribal exhaustion. In *Iowa Mutual,* the Court explained that because " '[t]ribal authority over the activities of non-Indians on [nonalienated] reservation lands is an important part of tribal sovereignty,' ... 'civil jurisdiction over such activities presumptively lies in the tribal courts unless affirmatively limited by a specific treaty provision or federal statute.' " *Iowa Mutual,* 480 U.S. at 18, 107 S.Ct. at 977; *see also Williams v. Lee,* 358 U.S. 217, 223, 79 S.Ct. 269, 272, 3 L.Ed.2d 251 (1959) (declaring tribal jurisdiction exclusive over lawsuit arising out of on-reservation sales transaction between nonmember plaintiff and member defendants); *Ninigret Dev. Corp.,* 207 F.3d at 32 "Civil disputes arising out of the activities of non-Indians on reservation lands almost always require exhaustion if they involve the tribe (or a tribe member)". And although there is generally no tribal jurisdiction over non-Indians for activities off the reservation or on non-Indian fee lands in the absence of a federal statute or treaty granting such authority, *Montana v. United States,* 450 U.S. 544, 101 S.Ct. 1245, 67 L.Ed.2d 493 (1981), there are specific circumstances in which such jurisdiction does exist:

A tribe may regulate, through taxation, Licensing or other means, the activities of nonmembers who enter into consensual relationships with the tribe or its members, through commercial dealing, contracts, leases, or other arrangements. A tribe may also retain inherent power to exercise civil authority over the conduct of non-Indians on fee lands within its reservation when that conduct threatens or has some direct effect on the political integrity, the economic security, or the health or welfare of the tribe.

450 U.S. at 565–66, 101 S.Ct. 1245. *See TTEA v. Ysleta del Sur Pueblo,* 181 F.3d 676, 684 (5th Cir.1999) (recognizing that while "[a] tribal court generally does not have jurisdiction over non-Indian defendants[,][a] tribe may regulate the activities of nonmembers who enter consensual relationships with the tribe or its members through commercial dealing, contracts, leases, or other arrangements" unless the civil jurisdiction of the tribal courts has been limited by congressional act) (citations omitted).

In this case, defendant has advanced the requisite colorable claim of tribal jurisdiction, since the activities of which he complains not only occurred on the reservation, but also involve the formation of an ostensible consensual relationship between Bank One and a member of the tribe.[3] Nevertheless, in response to

---

L.Ed.2d 818 (footnote omitted). The same "considerations of comity," *Iowa Mut. Ins. Co. v. LaPlante,* 480 U.S. 9, 15, 107 S.Ct. 971, 94 L.Ed.2d 10 (1987), provided the rationale for extending the doctrine to cases where a defendant in tribal court asserts federal-diversity jurisdiction in a related action in district court. *Id.,* at 16, 480 U.S. 9, 107 S.Ct. 971, 94 L.Ed.2d 10. Exhaustion was appropriate in each of those cases because "Congress is committed to a policy of supporting tribal self-government .... [which] favors a rule that will provide the forum whose jurisdiction is being challenged the first opportunity to evaluate the factual and legal bases for the challenge." *National Farmers Union Ins. Cos., supra,* at 856, 471 U.S. 845, 105 S.Ct. 2447, 85 L.Ed.2d 818.

3. In *Strate v. A–1 Contractors,* 520 U.S. 438, 449, 117 S.Ct. 1404, 1411, 137 L.Ed.2d 661 (1997), the Supreme Court held that in cases in which "it is plain that no federal grant provides for tribal governance of nonmembers' conduct on land covered by *Montana*'s main rule, it will be equally evident that tribal courts lack adjudicatory authority over dis-

defendant's motion, Bank One maintains that the tribal exhaustion doctrine does not apply because this case does *not* involve a challenge to the Tribal Court's jurisdiction; rather, this suit seeks simply to compel defendant to pursue his claims through arbitration as provided under § 4 of the FAA and thus, according to Bank One's characterization, raises only questions of federal law that do not involve tribal sovereignty or implicate the tribal exhaustion doctrine.

The line claimed by Bank One to separate the two suits, however, is not so apparent to the court. On the contrary, it is manifest to the court that, directly or not, the relief sought by Bank One in this case would undeniably undermine the tribal court's authority to determine its jurisdiction. That is because, while the relief demanded by Bank One is an order compelling arbitration, a concomitant goal, or a necessary byproduct of this suit, is to foreclose the Tribal Court from further consideration of defendant's claims for relief.[4] This is, then, in the court's opinion, properly viewed as a challenge to the Tribal

Court's jurisdiction which implicates considerations of tribal exhaustion. *See Basil Cook Enters.*, 117 F.3d at 63 (characterizing suit to enjoin proceedings before a tribal court and to compel arbitration in connection with a management agreement governing the operation of a gambling establishment on tribal lands as a "federal challenge to the jurisdiction of the Tribal Court," to which the tribal exhaustion doctrine applied).

In a related vein, Bank One, noting that the tribal exhaustion doctrine is based upon principles of comity, not jurisdiction, argues that because Congress has expressly authorized suits to compel arbitration to be brought in federal district court and has thus given litigants seeking to compel arbitration "an unfettered right" to relief in a federal forum, it thus follows that this court has no discretion and may not abstain from exercising its jurisdiction. It submits, in other words, that by mandating a federal forum for all suits to compel arbitration, Congress has affirmatively limited tribal court jurisdiction over such

---

putes arising from such conduct [and in such cases] state or federal courts will be the only forums competent to adjudicate those disputes." *Id.* at 459–60, 117 S.Ct. at 1416. In those cases, "the otherwise applicable exhaustion requirement ... must give way, for it would serve no purpose other than delay." *Id.* at 459–60, 117 S.Ct. at 1416.

This is not such a case, for this case, which involves events occurring on nonalienated land on the reservation and which implicates one of the two *Montana* exceptions, does not fall within *Montana*'s "main rule," which holds that there is no tribal jurisdiction over non-Indians for activities on non-Indian fee lands in the absence of a federal statute or treaty granting such authority. *See State of Nevada v. Hicks*, 196 F.3d 1020, 1024–27 (9th Cir.1999) recognizing " 'a strong geographic component' distinguishing incidents occurring on Indian-owned land from those on non-Indian owned land," and concluding that "[w]here the incidents underlying the ...

case occurred on Indian-owned, Indian-controlled land, over which the Tribe retained its right to exclude non-members," the applicable rule was that of *Williams v. Lee:* "where the underlying incidents occur on Indian-owned land, tribal court jurisdiction is presumed unless affirmatively limited by an act of Congress." citing *Williams v. Lee*, 358 U.S. 217, 222, 79 S.Ct. 269, 3 L.Ed.2d 251 (1959), in which the Court stated that it had "consistently guarded the authority of Indian governments over their reservations.... If this power is to be taken away from them, it is for Congress to do it."

4. Indeed, were this court to entertain the suit and grant Bank One's request to compel arbitration, then if the defendant were to resist arbitration and continue to pursue his claims in the tribal forum, Bank One's next step presumably would be to seek an order enjoining further proceedings in the Tribal Court— which would be a direct challenge to the Tribal Court's jurisdiction.

suits. Bank One's argument in this regard is not well taken.

In *National Farmers*, the Supreme Court identified three narrow situations in which the tribal exhaustion rule would not require litigants to first press their jurisdictional arguments in tribal court: "[1] where an assertion of tribal jurisdiction is motivated by a desire to harass or is conducted in bad faith, or [2] where the action is patently violative of express jurisdictional prohibitions, or [3] where exhaustion would be futile because of the lack of an adequate opportunity to challenge the court's jurisdiction." *National Farmers*, 471 U.S. at 856 n. 21, 105 S.Ct. at 2454 n. 21 (citation and internal quotations omitted); *see also Iowa Mutual*, 480 U.S. at 19 n. 12, 107 S.Ct. at 978 n. 12. Later, in *El Paso Natural Gas Co. v. Neztsosie*, 526 U.S. 473, 119 S.Ct. 1430, 143 L.Ed.2d 635 (1999), the Court, without referencing the *National Farmers* exceptions specifically, ruled that the doctrine of exhaustion of tribal remedies did not apply to claims brought in tribal court under the Price–Anderson Act,[5] reasoning that "[t]he situa-tion [t]here [involving a Price–Anderson Act claim was] the rare one in which [the Price–Anderson Act's] [unusual] statutory provisions for conversion of state claims to federal ones [resembling complete preemption] and removal to federal courts express[ed] [an unmistakable] congressional preference for a federal forum." [6] *Neztsosie*, 526 U.S. at 486, 119 S.Ct. at 1438.

Bank One has not contended that any of the three *National Farmers* exceptions apply, but instead, citing *Neztsosie*, argues that the tribal exhaustion rule is not applicable here because § 4 of the FAA, like the Price–Anderson Act, reflects an "unmistakable preference" for a federal forum for suits to compel arbitration. *See* 9 U.S.C. § 4 ("A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 23, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration pro-

**5.** The Price–Anderson Act grants "United States district courts original and removal jurisdiction over all 'public liability actions,' ... 42 U.S.C. § 2210(n)(2), defined as suits 'asserting public liability,' § 2014(hh), which 'shall be deemed to be ... action[s] arising under' § 2210. The Act ... provides the mechanics for consolidating such actions, § 2210(n)(2), for managing them once consolidated, § 2210(n)(3), and for distributing limited compensatory funds, § 2210(o)." *Neztsosie*, 526 U.S. at 477, 119 S.Ct. at 1433–34.

**6.** The Court explained,

By its unusual preemption provision, *see* 42 U.S.C. § 2114(hh), the Price–Anderson Act transforms into a federal action, "any public liability action arising out of or resulting from a nuclear accident," § 2210(n)(2). The Act not only gives a district court original jurisdiction over such a claim, *see ibid.*, but provides for removal to a federal court as of right if a putative Price–Anderson action is brought in a state court, *see ibid.* Congress thus expressed an unmistakable preference for a federal forum, at the behest of the defending party, both for litigating a Price–Anderson claim on the merits and for determining whether a claim falls under Price–Anderson when removal is contested.

...

We are at a loss to think of any reason that Congress would have favored tribal exhaustion. Any generalized sense of comity toward nonfederal courts is obviously displaced by the provisions for preemption and removal from state courts, which are thus accorded neither jot nor tittle of deference. The apparent reasons for this congressional policy of immediate access to federal forums are as much applicable to tribal—as to state—court litigation.

*Neztsosie*, 526 U.S. at 485–86, 119 S.Ct. at 1438.

ceed in the manner provided for in such agreement."). The court finds no merit in Bank One's position.[7]

Contrary to Bank One's insinuation, Congress has not expressed an intent to provide a federal forum for *all* suits to compel arbitration, but has instead extended a federal forum *only* to those suits for which there is otherwise an independent basis for federal jurisdiction; the FAA itself confers no jurisdiction on the federal courts. As this court recognized in *Bank One v. Harris*, No. 3:00CV665LN (S.D.Miss. Jan. 2, 2001),

> [A]lthough the Federal Arbitration Act expressly authorizes the filing of petitions to compel arbitration in federal district courts, the FAA treats arbitration simply as one means of resolving disputes that lie within the jurisdiction

of the federal courts, *Allied-Bruce Terminix Companies, Inc. v. Dobson*, 513 U.S. 265, 291, 115 S.Ct. 834, 848, 130 L.Ed.2d 753 (1995), and does not itself grant the federal courts subject matter jurisdiction, *id.;* therefore, an action brought in federal court to compel arbitration requires an independent basis for federal jurisdiction, such as federal question or diversity jurisdiction, *Specialty Healthcare Mgt., Inc. v. St. Mary Parish Hosp.*, 220 F.3d 650, 653 (5th Cir.2000) citing *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25 n. 32, 103 S.Ct. 927, 942 n. 32, 74 L.Ed.2d 765 (1983); *Atlantic Aviation, Inc. v. EBM Group, Inc.*, 11 F.3d 1276, 1280 (5th Cir.1994).

In this case, then, in contrast to the "rare" situation presented in *Neztsosie*, Bank One

---

7. It is not clear to this court whether the Court in *Neztsosie* was simply in substance (though not in name) applying the *National Farmers* "patently violative of express jurisdictional prohibitions" exception. What the Court did was examine the Price–Anderson Act provisions and legislative history to determine whether Congress intended to remove from tribal courts, in addition to state courts, jurisdiction over Price–Anderson Act claims, which is the relevant inquiry under the second *National Farmers* exception. If the Court was undertaking to apply the *National Farmers* exception, however, the standard which the Court articulated, i.e., "unmistakable preference," is arguably less stringent than at least some courts had interpreted the "patently violative of express jurisdictional prohibitions" exception. For example, in *Kerr–McGee Corp. v. Farley*, 115 F.3d 1498, 1502 (10th Cir.1997), the Tenth Circuit defined the *National Farmers* exception as follows:

> A substantial showing must be made by the party seeking to invoke this exception to the tribal exhaustion rule. In fact, tribal courts rarely lose the first opportunity to determine jurisdiction because of an "express jurisdictional prohibition." Cases in which tribal courts are not given the first opportunity to determine their jurisdiction typically involve situations where the federal court has exclusive jurisdiction, or where tribal

jurisdiction is foreclosed by sovereign immunity.

*Id.* (citations omitted). *See also Basil Cook Enters.*, 117 F.3d at 67 ("[E]xhaustion will be excused under the 'patently violative of express jurisdictional prohibitions' exception only in those rare cases when a tribal court's civil jurisdiction is found by a federal court to be in patent violation of express federal law."); *TTEA v. Ysleta del Sur Pueblo*, 181 F.3d 676, 684 (5th Cir.1999) holding that statute which did not "create exclusively federal jurisdiction" did not "overcome the presumption of concurrent ... (tribal jurisdiction."); *Blue Legs v. United States Bureau of Indian Affairs*, 867 F.2d 1094, 1098 (8th Cir. 1989) exhaustion of tribal remedies with respect to claim brought under section 6972(a)(1) of the Resource Conservation and Recovery Act was not required where the Act placed exclusive jurisdiction over such claims in federal court. The court notes, though, that at least one court has interpreted *Neztsosie* as finding exclusive federal jurisdiction under the Price–Anderson Act and thus finding more than a mere "preference" for federal jurisdiction. *See infra* n.8.

In any event, regardless of how the *National Farmers* exception is understood, or how *Neztsosie* is construed, this case is not one of the "rare" cases excepted from application of the tribal exhaustion doctrine.

would have no "right" to a federal forum in the absence of diversity jurisdiction.[8] And in the court's opinion, congressional authorization for filing suit to compel arbitration in federal court only if there is an independent basis for federal jurisdiction is not a sufficient basis upon which to conclude that Congress intended to exclude a tribal court from exercising jurisdiction. Here, the jurisdictional basis for Bank One's complaint is not the FAA at all, but diversity of citizenship jurisdiction, which alone is not a sufficient basis to override the federal policy of deference to tribal courts.[9] *See Stock West, Inc. v. Confeder-*

---

8. In *Kerr–McGee Corp. v. Farley*, 88 F.Supp.2d 1219, 1227 n. 2 (D.N.M.2000), the court expressed that it was "troubled about the possibility that the *Neztsosie* holding may be used to ship away at established tenants of tribal sovereignty," but was ultimately able to reconcile *Neztsosie* with the tribal exhaustion doctrine, as enunciated in *National Farmers* and *Iowa Mutual*, by reading *Neztsosie* as finding exclusive federal jurisdiction over Price–Anderson Act claims. The court explained:

> Other courts that have considered the general question of the scope of jurisdiction under the 1988 PAA amendments have found that Congress intended to create exclusive federal cause of action for torts arising out of nuclear incidents. Although these courts found exclusive federal jurisdiction in the context of removal from state court, this Court believes that in light of the *Neztsosie* ruling, this exclusive federal jurisdiction must apply to tribal courts as well where a defendant seeks a federal forum. Furthermore, the Ninth Circuit, in *State v. Hicks*, analyzed *Neztsosie* as holding that "the Price–Anderson act preempted the injury claims, requiring that actions be brought only in federal court." 196 F.3d 1020, 1026 (1999).

*Id.* (citations omitted). The court reasoned that its conclusion that the Price–Anderson claims before it were not subject to tribal exhaustion was "not inconsistent with *Iowa Mutual*, in which the Supreme Court held that tribal civil jurisdiction over the activities of non-Indians on tribal lands remains intact unless 'affirmatively limited by a specific treaty provision or federal statute[,]' 480 U.S. at 18, 107 S.Ct. 971, 94 L.Ed.2d 10," *id.* at 1032, because,

> [t]he Supreme Court in *Neztsosie* found that Congress intended to affirmatively limit non-federal adjudication of PAA actions, stating "any generalized sense of comity toward nonfederal courts is obviously displaced by the provisions for preemption and removal from state court. The appar-

ent reasons for this congressional policy of immediate access to federal forums are as much applicable to tribal—as to state—court litigation." 526 U.S. at 485–86, 119 S.Ct. 1430, 143 L.Ed.2d 635. This combination of the preference for a federal forum and the absence of comity concerns weighs heavily in favor of concluding that the PAA affirmatively creates exclusive federal jurisdiction over PAA claims at the request of the defendant, and conversely limits tribal jurisdiction over such cases. This Court's holding does not undermine the basis tenants of Indian tribal jurisdiction which hold that absent clear intent by Congress, tribal jurisdiction is presumed. *See National Farmers Union Ins. Co. v. Crow Tribe of Indians*, 471 U.S. 845, 105 S.Ct. 2447, 85 L.Ed.2d 818; *Iowa Mutual Ins. Co. v. LaPlante*, 480 U.S. 9, 107 S.Ct. 971, 94 L.Ed.2d 10. Rather, this Court finds only that Congress has expressed its clear intent for exclusive jurisdiction applicable both to state and tribal courts in the particular context of the PAA, where Congress has created a federal cause of action, complete with venue, consolidation and case management provisions and where the Supreme Court has stated in *Neztsosie* that such preference for a federal forum should apply with equal force to both tribal and state courts.

*Id.* at 1432; *see also Armstrong v. Mille Lacs County Sheriffs Dept.*, 112 F.Supp.2d 840, 844 (D.Minn.2000) (citing *Neztsosie*, and observing that "where Congress has entrusted a particular cause of action to the exclusive jurisdiction of the Federal Courts, then the Court need not defer to a Tribal Court, in that instance, to determine its jurisdiction to resolve the merits of the claim.").

9. In rejecting an argument that the statutory grant of diversity jurisdiction was sufficient to override the federal policy of deference to tribal courts, the Court in *Iowa Mutual*, 480 U.S. at 17–18, 107 S.Ct. at 977, stated,

> Although Congress undoubtedly has the power to limit tribal court jurisdiction, we

*ated Tribes of the Colville Reservation,* 873 F.2d 1221, 1228 n. 16 (9th Cir.1989) (implicitly rejecting argument that strong federal favoring arbitration should overcome the policy of comity in favor of the tribal court, and observing that "particularly since the validity of the arbitration clauses in the contracts are themselves in dispute, Stock West's argument that the federal courts should not defer to the tribal court is weak."); *Calumet Gaming Group–Kansas, Inc. v. The Kickapoo Tribe of Kansas,* 987 F.Supp. 1321, 1328 (D.Kan.1997) (concluding that *National Farmers* exception did not apply to suit to compel arbitration since FAA "does not expressly limit tribal court jurisdiction. Presumably, the tribal court could enforce the FAA as well as the federal courts.").

In its effort to avoid a tribal forum, Bank One devotes considerable attention in its responsive memorandum to the *Colorado River* abstention doctrine, arguing that the abstention criteria established in *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), which it submits "must be applied by a court when considering the tribal exhaustion doctrine," weighs decidedly against requiring tribal exhaustion. The undersigned, however, does not agree that a determination of whether the tribal exhaustion rule applies in a given case is to be made by reference to the *Colorado River* factors. The Court did not so hold in *Iowa Mutual*—contrary to Bank One's contention. Instead, the Court merely noted that the tribal exhaustion/abstention rule "is analogous to princi-

ples of abstention articulated in *Colorado River,*" and remarked that "[i]n *Colorado River,* as here, strong federal policy concerns favored resolution in the nonfederal forum," *Iowa Mutual,* 480 U.S. at 16 n. 8, 107 S.Ct. at 976 n. 8.

The fact that the Supreme Court did not even allude to *Colorado River* when it formulated the tribal exhaustion rule in *National Farmers,* and that the Court in *Iowa Mutual* merely referenced *Colorado River* abstention but did not purport to apply that doctrine, strongly belies Bank One's conclusion that the *Colorado River* doctrine applies in the context of tribal exhaustion. Moreover, while the tribal exhaustion and *Colorado River* abstention doctrines have in common the fact that both are comity-based, premised on respect for another court system, there is a fundamental difference in the policy considerations which inform application of the doctrines. The *Colorado River* doctrine proceeds from the premise that "the federal courts have a 'virtually unflagging obligation ... to exercise the jurisdiction given them' " and that therefore, the pendency of litigation in state court is *not* a bar to proceedings in federal court involving the same subject matter in the absence of "exceptional circumstances." *Colorado River,* 424 U.S. at 817, 96 S.Ct. at 1246. The policy which animates the tribal exhaustion rule is quite different, as it subordinates the federal court's obligation to exercise its jurisdiction to the greater policy of promoting tribal self-government. *See Iowa Mutual,* 480 U.S. at 14, 107 S.Ct.

do not read the general grant of diversity jurisdiction to have implemented such a significant intrusion on tribal sovereignty, any more than we view the grant of federal-question jurisdiction, the statutory basis for the intrusion on tribal jurisdiction at issue in *National Farmers Union,* to have done so. The diversity statute, 28 U.S.C. § 1332, makes no reference to Indians and nothing

in the legislative history suggests any intent to render inoperative the established federal policy promoting tribal self-government. . . . Congress has amended the diversity statute several times since the development of tribal judicial systems, but it has never expressed any intent to limit the civil jurisdiction of the tribal courts.

at 975. Thus, in contrast to *Colorado River*, under which abstention is the exception rather than the rule, deference to tribal courts pursuant to the tribal exhaustion doctrine is the rule rather than the exception. *See Iowa Mutual*, 480 U.S. at 22, 107 S.Ct. at 980 (Stevens, J., concurring in part and dissenting in part) ("[U]ntil today, we have never suggested that an Indian Tribe's judicial system is entitled to a greater degree of deference than the judicial system of a sovereign state. Today's opinion, however, requires the federal court to avoid adjudicating the merits of a controversy also pending in tribal court although it could reach those merits if the case instead were pending in state court."); *cf.* Patti Alleva et al., *Dispute Resolution in Indian Country: Does Abstention Make the Heart° Grow Fonder?*, 71 N.D. L.Rev. 541, 548–49 (1995) (noting that "in *Colorado River*, the Court was only concerned about judicial economy. In *National Farmers* and *Iowa Mutual*, however, the Court was also concerned about promoting tribal self-government by preserving the tribal court's authority over reservation affairs.").[10]

In a further effort to persuade this court to maintain this case in federal court, Bank One submits that this case is analogous to *F.G.S. Constructors, Inc. v. Carlow*, 64 F.3d 1230 (8th Cir.1995), in which the court found that the tribal exhaustion doctrine was not applicable because the parties' agreement contained a forum selection clause by which they had agreed that any dispute could be heard in either tribal court *or* federal district court. The court was of the view that "there was no significant comity reason to defer ... [the] litigation first to the tribal court" since the Tribe, by the forum selection clause, had

**10.** It is true, as Bank One notes, that the court in *Vance v. Boyd Mississippi, Inc.*, 923 F.Supp. 905 S.D. Miss.1996, did hold that *Colorado River* applied in the context of tribal exhaustion; but that decision, which has been criticized by a number of commentators, *see See* Royster, Judith V., *Statute and Scrutiny: Post-Exhaustion review of Tribal Court Decisions*, 46 U. Kan. L.Rev. 241, 262–63 (1998); Koehn, Melissa L., *Civil Jurisdiction: The Boundaries Between Federal and Tribal Courts*, 29 Ariz. St. L.J. 705, 768 n.164 (1997), is not binding on the undersigned.

In any event, even were the court to take into account the *Colorado River* factors in determining whether it should "stay its hand" while the tribal court considers its jurisdiction, the court would resolve the issue in favor of abstention, for while the court is fully cognizant of the strong federal policy favoring arbitration to which Bank One repeatedly refers, the court is also well aware of the strong federal policy of encouraging tribal self-government and fostering the relationship of comity between the federal and tribal courts. Thus, while the court understands that "the desirability of avoiding piecemeal litigation" is typically not a factor that counsels in favor of *Colorado River* abstention in a case brought to compel arbitration under the FAA because of the federal policy favoring arbitration, *see Safety Nat'l Cas. Corp. v. Bristol–Myers Squibb Co.*, 214 F.3d 562, 565–66 (5th Cir.2000). ("the 'piecemeal litigation' factor is not applicable in the FAA context, where the overriding federal policy is 'to give effect to ... arbitration agreements.' ") (quoting *Moses H. Cone*, 460 U.S. at 20, 103 S.Ct. 927, 74 L.Ed.2d 765), in a case which also involves a challenge to a tribal court's jurisdiction, the competing federal policy favoring tribal self-government must be given consideration. And this court is of the view that in such a case, it is this latter policy which must prevail. *Cf. United States v. Tsosie*, 849 F.Supp. 768, 771 (D.N.M.1994) (noting that "[o]ur Supreme Court has been clear that jurisdictional issues should be determined, in the first instance, in tribal court," concluding "that the *National Farmers* comity considerations outweigh[ed] the short-term considerations of [the] parties" and observing that "[i]t makes no sense and would be grossly inefficient to try this case in [federal district court], only to find on a potential appeal, that the case should have been remanded to tribal court. I prefer to have this case proceed on the track and in the chronological order prescribed by our Supreme Court.").

agreed that disputes need not be litigated in tribal court. *Id.* at 1233. Bank One reasons that in this case, the parties' arbitration agreement operates as a forum selection clause, since it expressly incorporates the FAA, and since § 4 of the FAA permits suits to compel arbitration to be brought in federal district court. The court, however, is not only dubious of the conclusion that the existence of a forum-selection clause obviates tribal exhaustion,[11] but is wholly unpersuaded that the subject arbitration provision may fairly be said to constitute a choice by defendant of this court as a forum for any litigation.

■ For the foregoing reasons, the court concludes that the tribal exhaustion doctrine applies in this case. The question then becomes whether the court should stay or dismiss the case. "In applying the tribal exhaustion rule, district courts have discretion to decide whether to stay or to dismiss the federal action." *Potaluck Corp. of Kansas v. Prairie Band of Potawatomi Indians,* No. Civ. A. 99–2051–GTV, 2000 WL 1721797, at *3 (D.Kan. Aug.23, 2000) (citing *National Farmers,* 471 U.S. at 857, 105 S.Ct. 2447, and *Iowa Mutual,* 480 U.S. at 20 n. 14, 107 S.Ct. 971). The court in *Potaluck* decided to dismiss that case without prejudice "because no claims ha[d] been brought to which the tribal exhaustion rule should not be applied, the case [was] still in the early stages of litigation, and dismissal without prejudice [would] allow Plaintiff to return to federal court once it has exhausted its tribal court remedies." *Id.; see also Na-*

---

11. As one court has noted,

> There is a difference of opinion ... as to whether contractual forum-selection clauses escape application of the [tribal exhaustion] doctrine. *Compare Basil Cook,* 117 F.3d at 63–64, 69 (affirming application of tribal exhaustion doctrine despite the presence of an arbitration clause in the contract sub judice), and [*Snowbird Const. Co. v. United States,* 666 F.Supp. 1437, 1444 (D.Idaho 1987)] (holding that the initial interpretation of a contractual forum-selection clause must be made by the tribal court) *with* [*Altheimer & Gray v. Sioux Mfg. Corp.,* 983 F.2d 803, 814–15 (7th Cir.1993)] (deciding that the tribal exhaustion doctrine did not apply to a forum-selection clause in a contract between a non-Indian corporation and an Indian manufacturing company).

*Ninigret Dev. Corp.,* 207 F.3d at 33. That court concluded that although the question was close, it believed that under *National Farmers,* "the determination of the existence and extent of tribal court jurisdiction must be made with reference to federal law, not with reference to forum-selection provisions that may be contained within the four corners of an underlying contract," *id.,* reasoning as follows:

> At that stage, the pivotal question is not which court the parties agreed would have jurisdiction, but which court should, in the first instance, consider the scope of the tribal court's jurisdiction and interpret the pertinent contractual clauses "including any forum-selection proviso". *See Iowa Mut.,* 480 U.S. at 16, 107 S.Ct. 971; *National Farmers,* 471 U.S. at 855–57, 105 S.Ct. 2447. This logic indicates that where, as here, the tribal exhaustion doctrine applies generally to a controversy, an argument that a contractual forum-selection clause either dictates or precludes a tribal forum should not be singled out for special treatment, but should initially be directed to the tribal court. *See Basil Cook,* 117 F.3d at 63–64, 69; *Snowbird,* 666 F.Supp. at 1444.
>
> We also believe that this approach comports with the concern for tribal sovereignty that forms the epicenter of the tribal exhaustion doctrine. *See El Paso Natural Gas,* 526 U.S. at 483, 119 S.Ct. at 1437; *National Farmers,* 471 U.S. at 856, 105 S.Ct. 2447. For the district court to bypass the tribal court and interpret the forum-selection clause itself would place the two judicial systems in direct competition with each other, and thereby undermine the tribal court's authority over tribal affairs. Proper respect for tribal legal institutions counsels convincingly against putting courts on such a collision course. *See Iowa Mut.,* 480 U.S. at 16, 107 S.Ct. 971.
>
> *Id.*

vajo Nation v. Intermountain Steel Bldgs., Inc., 42 F.Supp.2d 1222, 1230–31 (D.N.M.1999) (recognizing district court's discretion "to either dismiss without prejudice or to stay federal court proceedings when exhaustion of tribal court remedies is required," and concluding that it was appropriate to dismiss the action without prejudice "to allow the parties to proceed expeditiously in the courts of the Navajo Nation"); *Atkinson Trading Co. v. Navajo Nation*, 866 F.Supp. 506, 512 (D.N.M.1994) (finding "no reason to retain jurisdiction at this point and ... dismiss[ing][the] case without prejudice"); *cf. Calumet Gaming Group–Kansas*, 987 F.Supp. at 1330 (observing that in the Tenth Circuit, "[a] stay is preferred because if the proceedings in the other court 'do not resolve all the federal claims, a stay preserves an available federal forum in which to litigate the remaining claims, without the plaintiff having to file a new federal action,'" and finding that since the plaintiff had requested a stay and the Tribe had not offered any reason why the court should dismiss the action instead, the case would be stayed pending the plaintiff's exhaustion of tribal remedies).

The court in this case, in the exercise of its discretion, will dismiss this case, as requested by defendant, as the court perceives no particular benefit in staying rather than dismissing the case.[12]  According-ly, it is ordered that defendant's motion to dismiss is granted.

---

12. This is so even though the court recognizes that the case may ultimately return to federal court. As the court in *Ninigret Development Corp. v. Narragansett Indian Wetuomuck Housing Authority*, 207 F.3d at 35, explained,

Since the concern for exhaustion arises out of comity considerations rather than jurisdictional constraints, remitting the case to the tribal court does not preclude the possibility of review by the federal court at a future date. *See Iowa Mut.*, 480 U.S. at 19, 107 S.Ct. 971; *Brown v. Washoe Hous. Auth.*, 835 F.2d 1327, 1329 (10th Cir.1988). Should the case return to the federal court, all preserved jurisdictional issues (including those related to the tribal court's handling of the forum-selection clause) are subject to plenary district court review. *See Iowa Mut.*, 480 U.S. at 19, 107 S.Ct. 971. Nevertheless, as long as the tribal court has properly defined its own jurisdiction, respect for the tribal court system will bar the relitigation of merits-related issues that were presented to and decided by that court. *See id.; see also* David H. Getches et al., Federal Indian Law 528 (4th ed. 1998) ("The federal court should not be tempted beyond the jurisdictional question, even by a tribal court's decision on the merits that it finds questionable.").