DENNIS, Circuit Judge,
concurring in part and dissenting in part:
I concur in the majority opinion’s affirmance of the district court’s summary judgment dismissing the plaintiffs’ physical radiation injury and illness claims because the plaintiffs failed to adduce evidence to show that there is a genuine dispute as to the material fact issue of specific or individualized causation; that is, they failed to show that a reasonable trier of fact could find that their alleged bodily injuries and illnesses were caused by overexposure to radiation.[1] But I respectfully dissent from the majority’s dismissal of the plaintiffs’ “offensive contact” battery claims on the theory that the PAA implicitly abrogates personal injury claims that are not based on or incidental to “bodily injury, sickness, disease, or death, or loss of or damage to property, or loss of use of property.” 42 U.S.C. § 2014(q). Had Congress intended to limit recovery to these categories of personal injury claims, it easily could have and probably would have plainly and expressly said so.[2] Instead, however, § 2014 of the PAA clearly uses the bodily injury and property damage terms only for a specific federal jurisdictional purpose: it (1) defines a “nuclear incident” as an occurrence causing bodily injury, sickness, disease, or death, or property damage or loss resulting from the radioactive or other properties of specified nuclear material, 42 U.S.C. § 2014(q); (2) defines “public liability” as “any legal liability arising out of or resulting from a nuclear incident or precautionary evacuation,” except for certain claims that are covered by workers’ compensation, that arise from an act of war, or that involve harm to the licensed property where the nuclear incident occurs, id. § 2014(w); and (3) defines a “public liability action” as “any suit asserting public liability,” which “shall be deemed to be an action arising under” the PAA, id. § 2014(hh). Contrary to the majority opinion, I do not think Congress intended for these jurisdictional terms to serve the additional purpose of limiting the types of claims that may be brought in a public liability action or of providing an ordinary *201 preemption defense against state-law tort claims. The PAA’s text and objectives contradict the majority’s reading.
The PAA itself does not set forth the grounds for or the scope of a defendant’s liability for nuclear torts; rather, § 2014(hh) provides that “the substantive rules for decision” in a public liability action “shall be derived from the law of the State” in which a nuclear incident occurs, “unless such law is inconsistent with the provisions of’ 42 U.S.C. § 2210. The PAA expressly excludes only three types of claims from public liability: workers’ compensation claims, act of war claims, and certain types of property claims. Id. § 2014(w).
Nothing in § 2210 expressly excludes, abrogates or modifies any particular kind of claim against a defendant in a public liability action. Further, the substantive rules for decision derived from Texas law for the plaintiffs’ “offensive contact” battery claims in this case are not inconsistent with any provision of § 2210. Section 2210 “provide[s] certain federal licensees with a system of private insurance, Government indemnification, and limited liability for claims of ‘public liability.’ ” El Paso Natural Gas Co. v. Neztsosie, 526 U.S. 473, 476, 119 S.Ct. 1430, 143 L.Ed.2d 635 (1999). Specifically, § 2210 provides two classes of defendants — Nuclear Regulatory Commission licensees and construction permittees, and Department of Energy contractors— with protection against public liability by (1) requiring that licensees shall maintain public liability insurance as prescribed by the Commission, (2) requiring the Commission and the Department to indemnify licensees and contractors against public liability in excess of the prescribed liability insurance coverage, and (3) providing that the aggregate public liability for a single nuclear incident shall not exceed certain specified dollar amounts. The statute, and regulations under it, limit the application of the insurance, indemnity, and liability cap provisions to coverage against liability resulting from bodily injury, sickness, disease, death, and property damage; but this, of course, is not the same thing as exempting all defendants from all other forms of personal injury liability. Rather, it indicates only that Congress recognized that without such protections, licensees and contractors could be mulcted in damages for causing bodily injury, sickness, disease, death, or property damage or loss; and that Congress considered it important to offer licensees and contractors vehicles of protection from such liability “[wjith the object of ‘encouraging] the private sector to become involved in the development of atomic energy for peaceful purposes,’ ” id. at 476, 119 S.Ct. 1430 (second alteration in original) (quoting Duke Power Co. v. Carolina Envtl. Study Group, Inc., 438 U.S. 59, 63, 98 S.Ct. 2620, 57 L.Ed.2d 595 (1978)). Nothing in § 2210 immunizes licensees and contractors from liability for other kinds of harms or prevents them from providing their own self-insurance or private insurance against such liability.
The majority opinion cannot point to any part of § 2210 that clearly exempts nuclear licensees and contractors from liability for causing persons to suffer harms other than bodily injury, sickness, disease, death, or property damage or loss. Instead, the majority points to the coincidence that the assertion of one of those named perils is essential both to jurisdiction for a federal public liability action, per § 2014(hh), and to protection of licensees and contractors by the insurance, indemnity, and liability-cap provisions of § 2210. See Maj. Op. 195-97. Contrary to the majority’s reasoning, however, this coincidence does not indicate that licensees and contractors are exempt from liability for having caused harms that did not involve bodily injury, sickness, disease, death or property dam *202 age. Instead, it clearly implies only that Congress considered it crucially important that licensees and contractors be offered protection from liability for those harms through § 2210.
By reading the PAA to exclude or bar any claim that is not based on or incidental to bodily injury, sickness, disease, death, or property damage or loss, the majority opinion gives those terms the effect of an ordinary preemption defense that extinguishes all other claims.[3] However, as the Supreme Court made clear in El Paso Natural Gas, the PAA provides not for ordinary preemption but for “complete preemption,” 526 U.S. at 484 n. 6, 119 S.Ct. 1430, which converts all state-law claims into federal claims that are removable to federal court and that, if removed, must be adjudicated there, see id. at 484-85, 119 S.Ct. 1430. The majority’s reading is therefore contrary to the Supreme Court’s interpretation of the PAA.
The majority opinion’s interpretation of the PAA will produce other results that Congress is unlikely to have intended. By reading into the PAA a blanket exclusion or bar to the recovery of damages that are not based on or incidental to the types of injuries named in the Act, the majority opinion grants an ordinary preemption defense to any defendant sued under the Act. In other words, persons other than nuclear licensees and contractors will be exempted from liability for causing personal injuries other than bodily injury, sickness, disease, death, or property damage or loss, although they have not qualified for or obtained licenses or contracts, and although they have not paid for the insurance or contracted for indemnity with the Department of Energy as required of licensees and contractors under § 2210. Thus, the majority opinion’s reading of the PAA produces at least two effects that Congress likely did not intend: it overprotects nuclear licensees and contractors by exempting them from liability for causing the types of injuries for which Congress expected them to provide their own self-insurance or private insurance; and it protects persons other than licensees and contractors by barring their liability for personal injuries other than bodily injury, sickness, disease, death, or property damage or loss, despite their not having met the requirements that § 2210 places on licensees and contractors.

1. Complete Preemption

The Supreme Court in El Paso Natural Gas explained that the PAA is an instance of “complete preemption,” under which Congress has converted a public liability action and its individual claims into federal actions that are removable to federal court and, when removed, must be adjudicated there. This supports the view of the PAA that its plain words indicate — that personal injury plaintiffs are not restricted to recovery only for bodily injury, sickness, disease, death, or property damage, but may recover for injuries according to rules for decision derived from state law, unless such law is inconsistent with § 2210. This also corroborates the conclusion that recovery for personal injuries other than bodily injury, sickness, disease, death, or property damage is not inconsistent with § 2210, which is discussed in more detail in the next section of this partial dissent.
Ordinarily, when a claim may be brought in either state or federal court, *203 the plaintiff is master of the selection of jurisdiction. A plaintiff is entitled to a state forum for the adjudication of most claims arising under state law, even when the defendant contends that federal law preempts those claims. In a suit brought in state court under state law, “[fjederal pre-emption is ordinarily a federal defense to the plaintiffs suit. As a defense, it does not appear on the face of a well-pleaded complaint, and, therefore, does not authorize removal to federal court.” Metro. Life Ins. Co. v. Taylor, 481 U.S. 58, 63, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987). However, this general rule making a plaintiff the master of his claim is subject to an important exception, known as “complete preemption.” Congress occasionally deems a defined class of common-law claims to be claims arising under federal law and entitles the defendant to choose a federal forum — not just for the ultimate adjudication of such claims on the merits, but also for the threshold inquiry into whether particular claims fall within the preempted class. See generally 14B Charles Alan Wright, Robert E. Miller, Edward H. Cooper and Joan E. Steinman, Federal Practice and Procedure § 3722.2 (4th ed. 2009).
In El Paso Natural Gas, the Supreme Court confirmed that the PAA, “[b]y its unusual preemption provision, ... transforms into a federal action ‘any public liability action____’ ” 526 U.S. at 484, 119 S.Ct. 1430 (quoting 42 U.S.C. § 2210(n)(2)). “The Act not only gives a district court original jurisdiction over such a claim, but provides for removal to a federal court as of right if a putative Price-Anderson action is brought in a state court. Congress thus expressed an unmistakable preference for a federal forum, at the behest of the defending party, both for litigating a Price-Anderson claim on the merits and for determining whether a claim falls under Price-Anderson when removal is contested.” Id. at 484-85, 119 S.Ct. 1430 (citations omitted). The Court stated that this statutory “structure, in which a public liability action becomes a federal action, but one decided under substantive state-law rules of decision that do not conflict with the Price-Anderson Act, resembles what we have spoken of as ‘ “complete pre-emption” doctrine.’ ” Id. at 484 n. 6, 119 S.Ct. 1430 (citations omitted) (quoting Caterpillar Inc. v. Williams, 482 U.S. 386, 393, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987)).[4]
The principal consequence of complete preemption, as distinguished from ordinary preemption, is that a defendant sued in state court may immediately remove the case to federal court; have the federal court resolve any dispute about whether the plaintiffs claims fall within the scope of the complete preemption scheme; and, if they do, have the federal court adjudicate the case on the merits if the plaintiff elects to proceed (and can proceed) with claims under federal law. See Caterpillar, 482 U.S. at 393-94, 107 S.Ct. 2425; Metro. Life, 481 U.S. at 63-65, 107 S.Ct. 1542. Significantly, a defendant’s right to immediate federal court resolution of a preemption claim depends not on whether that claim is “obviousfly]” correct at the outset, see Metro. Life, 481 U.S. at 66, 107 S.Ct. 1542, or even on whether it is ultimately meritorious, see, e.g., Caterpillar, 482 U.S. at 399, 107 S.Ct. 2425, but on whether it is *204 a claim subject to complete, rather than ordinary, preemption.
The majority, in effect, erroneously reads the jurisdictional requirement of the assertion of a public liability action (to enforce liability for “bodily injury, sickness, disease, or death,” or property damage or loss, caused by a nuclear incident) as an ordinary preemption provision that extinguishes all other personal injury claims. The majority’s interpretation of the PAA contradicts and disregards El Paso Natural Gas and the PAA’s complete preemption provision, 42 U.S.C. § 2014(hh). Congress could not have intended for the jurisdictional requirement of asserting a public liability action to do double duty as an ordinary preemption provision that extinguishes, instead of enforcing, the plaintiffs’ “offensive contact” battery claims. Instead, the legislative intent inherent in the complete preemption provision of the PAA is to replace the plaintiffs’ state-law claims with federal claims derived from state law which may be removed and, if removed, must be adjudicated in federal court.

2. The PAA’s Text and Purposes

The majority opinion does not identify any provision of the PAA, nor any purpose for which the PAA was enacted or amended, that is actually inconsistent with anything in the plaintiffs’ “offensive contact” battery claims derived from Texas law. “While the provisions of the PAA are complex, its chief feature is the creation of a public/private insurance system covering reactor accidents, accompanied by a limitation (or ‘cap’) on aggregate liability to the public in the event of a major accident.” Richard Goldsmith, Regulatory Reform and the Revival of Nuclear Power, 20 Hofstra L.Rev. 159, 163 n. 11 (1991). Section 2210 is titled “Indemnification and limitation of liability.” It requires some licensees, and allows the Nuclear Regulatory Commission to require other licensees, to maintain specified financial protection to cover “public liability claims,” 42 U.S.C. § 2210(a); provides that the Commission shall agree to indemnify and hold harmless specified licensees and other persons from damages for “public liability arising from nuclear incidents which is in excess of the level of financial protection required” of them, id. § 2210(c); and limits “the aggregate public liability for a single nuclear incident of persons indemnified” to specified dollar amounts, id. § 2210(e). Nothing in § 2210 is inconsistent with a state or federal court holding a defendant of any kind, including a nuclear licensee or contractor, liable for nuclear-radiation-caused personal injuries not resulting in bodily injury, sickness, disease, death, or property damage. Section 2210 is focused on providing nuclear licensees and contractors with protection from public liability arising from nuclear incidents, but it does not exclude or bar other types of harms from reparation by state or federal courts.
Until the 1988 amendments to the PAA, personal injury claims arising from nuclear radiation were brought under state law, although federal law preempted state law in some important respects. Therefore, absent complete diversity, the federal courts lacked original jurisdiction to hear most such claims. See In re TMI Litig. Cases Consol. II, 940 F.2d 832, 857 (3d Cir.1991). That jurisdictional impediment assumed particular importance after the nuclear accident at Three Mile Island in 1979, which gave rise to “150 separate cases against [Three Mile Island] defendants, with over 3,000 claimants, in various state and Federal courts.” S.Rep. No. 100-218, at 13, U.S.Code Cong. & Admin.News 1988, pp. 1476, 1488 (1987). There was then no mechanism for removing those cases to a single federal court. *205 The then-existing removal and consolidation provisions of the PAA were confined to “extraordinary nuclear occurrences,” see 42 U.S.C. § 2014(j), and the Commission had not declared the Three Mile Island incident to be such an occurrence. The resulting proliferation of uncoordinated lawsuits led Congress to amend the PAA’s removal and consolidation provisions to encompass cases arising out of any “nuclear incident.” See 42 U.S.C. § 2014(hh); id. § 2210(n)(2). To ensure removability, Congress converted “any suit asserting public liability” for a nuclear incident into “an action arising under” the PAA. Id. § 2014(hh).
In this case, the plaintiffs brought suit in state court alleging that they sustained both physical injuries and offensive contact batteries as the result of a nuclear incident, and the defendants — taking advantage of the PAA — removed the entire case to federal court because it is a “suit asserting public liability” under the PAA. The federal district court rendered partial summary judgment against the plaintiffs because of the absence of a genuine issue as to the causation of their physical injuries by the alleged nuclear incident. Now, the majority holds that the dismissal of those claims also causes the plaintiffs’ remaining claims — which involve battery by “offensive contact” and do not require proof of physical injury — to essentially be preempted and extinguished. The majority holds that those remaining claims must be dismissed, even though there has been no showing that the plaintiffs are unable to establish any of the elements of those claims. I would instead hold that those remaining claims must be adjudicated in accordance with the substantive rules for decision derived from state law, because the defendants have failed to show that the rules for decision of those claims are inconsistent with § 2210.
The PAA determines whether an action is a “public liability action” based on what a plaintiff “assert[s],” and not based on what the plaintiff is ultimately able to prove. Id. § 2014(hh). This determination has to be made at the time the action is either filed in, or removed to, a federal court, because the federal court has to determine whether it has jurisdiction over the case. Any case in which public liability for a nuclear incident is asserted is a “public liability action” to be adjudicated according to “substantive rules for decision” drawn from state law, “unless such law is inconsistent with the provisions of’ § 2210. Id. There is no provision of § 2210 that is inconsistent with the rules for decision derived from Texas law in plaintiffs’ “offensive contact” battery claims in this case. Nor is there any provision of the PAA which requires a plaintiff to prove that a “nuclear incident” has occurred before he or she can recover on any claim.[5] Therefore, the plaintiffs should be able to proceed with their battery claims in the federal district court under the rules of decision derived from Texas law.
As the majority recognizes, “ ‘The objective of a court called upon to interpret a statute is to ascertain congressional intent and give effect to legislative will.’ The clearest indication of congressional intent is the words of the statute itself.” Davis v. Johnson, 158 F.3d 806, 810-11 (5th Cir. 1998) (citation omitted) (quoting Johnson *206 v. Am. Airlines, Inc., 745 F.2d 988, 992 (5th Cir.1984)). The words of § 2210 of the PAA do not require the plaintiffs to prove that a “nuclear incident” has occurred in order to pursue their “offensive contact” battery claims derived from state law. Furthermore, the statute’s legislative history shows that the intention of Congress in enacting and amending the PAA was to preserve state tort law as much as possible. The report of the House Committee on Interior and Insular Affairs concerning the bill that became the Price-Anderson Amendments Act of 1988 declared that “the policy of only interfering with state tort law to the minimum extent necessary [is] a principle which has been embodied in the Price-Anderson Act for the last 30 years.” H.R.Rep. No. 100-104, pt. 1, at 20 (1987). Consistent with this clearly stated congressional policy, courts ought not to read the PAA as impliedly putting up additional hurdles that are not found in either the relevant state law or the text of the PAA.
The majority’s reading of the PAA contravenes the main purpose of the 1988 amendments, in which Congress in light of Three Mile Island provided that actions involving assertions of liability from “nuclear incidents” would be “public liability actions” deemed to arise under the PAA and to be removable and fully litigable in federal court. The purpose was to improve the manageability and fairness of litigation arising from nuclear accidents like Three Mile Island by making it possible to consolidate multiple suits in a single federal court. See El Paso Natural Gas, 526 U.S. at 477, 486, 119 S.Ct. 1430. This goal is not furthered by the majority’s holding that the PAA exempts radiation suit defendants from all liability, except for claims based on or incidental to bodily injury or property damage. Future radiation victims who prefer to litigate their radiation claims in state court are encouraged by the majority’s interpretation of the PAA to file separate non-bodily injury suits in state court and to avoid pleading a public liability action in every case, so as to prevent or deter the removal of their state-law suits to federal court and the automatic extinguishment of claims that are not based on or incidental to successful bodily injury or property damage claims. The likely multiplication of artfully pleaded state court suits is apt to seriously undercut the 1988 amendments’ clear goal of removal and consolidation of radiation suits to promote the efficient, fair and consistent resolution of claims arising from alleged or asserted nuclear incidents.
Indeed, the majority’s reading of the PAA would impede Congress’s purposes in the event of a future accident exactly like Three Mile Island. Ultimately, Three Mile Island does not appear to have caused any bodily injuries, sickness, disease, or death. Eric R. Pogue, The Catastrophe Model of Risk Regulation and the Regulatory Legacy of Three Mile Island and Love Canal, 15 Penn St. Envtl. L.Rev. 463, 467-72 (2007); see In re TMI Litig., 193 F.3d 613 (3d Cir.1999) (affirming grant of summary judgment in defendants’ favor on some Three Mile Island-related personal injury claims). Therefore, if a similar incident were to occur in this circuit in the future, numerous plaintiffs would likely file separate suits in state court alleging only non-physical harms, in order to avoid having those claims brought into federal court and extinguished. The majority thus encourages the same proliferation of separate state-court lawsuits that Congress sought to prevent.
In an analogous statutory context in which Congress similarly provided for state law to serve as the source for federal rules for decision, our court and the Supreme Court have emphasized that courts should follow the applicable state law and *207 refrain from creating additional rules of federal law. Similar to the PAA, the Outer Continental Shelf Lands Act (OCSLA) provides for the application of state law as federal law. See In re TMI Litig. Cases Consol. II, 940 F.2d 832, 856 (3d Cir.1991) (citing 43 U.S.C. § 1333(a)(2)). In an OCSLA case, Chevron Oil Co. v. Huson, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971),[6] the Supreme Court explained: “Congress specified that a comprehensive body of state law should be adopted by the federal courts in the absence of existing federal law---- Thus, Congress ... did not intend that federal courts fill in ... ‘gaps’ [in federal statutes] by creating new federal common law.” Id. at 104-05, 92 S.Ct. 349. Thus, “federal courts should not create interstitial federal common law when the Congress has directed that a whole body of state law shall apply.” Id. at 105 n. 8, 92 S.Ct. 349. Accordingly, in Fontenot v. Dual Drilling Co., 179 F.3d 969 (5th Cir.1999), we observed that “our Circuit has consistently rejected attempts of litigants to have ‘federal common laV override rules of Louisiana tort law” in the OCSLA context. Id. at 977; see also Olsen v. Shell Oil Co., 708 F.2d 976, 979 (5th Cir.1983) (following Huson and deploring the creation of new federal common law in this context). In this case, the majority’s imposition of an additional threshold requirement of proof of bodily injury, sickness, disease, death, or property damage fails to follow the example of these instructive OCSLA cases, and likewise fails to carry out the intent of Congress to “only interfer[e] with state tort law to the minimum extent necessary” through the PAA. H.R.Rep. No. 100-104, pt. 1, at 20 (1987).
In short, neither the words nor the purposes of the PAA support the majority’s reading into the Act of a threshold requirement that the plaintiffs must succeed with a bodily injury, sickness, death, or property damage claim in order to pursue their offensive contact battery by radiation claims. The majority’s interpretation of the Act conflicts with Congress’s stated policies of minimizing interference with state law under the PAA and of fostering the removal, consolidation and uniform litigation of claims arising out of alleged or asserted nuclear incidents. The plaintiffs’ claims of battery by “offensive contact” should be resolved under substantive rules of decision derived from Texas law, as required by § 2014(hh), because they are not inconsistent with § 2210 and because, as the Supreme Court made clear in El Paso Natural Gas, they are subject to complete preemption, removal, and full litigation, rather than extinguishment, in the federal district court under the PAA.

. I respectfully disagree in part with the majority's reasoning in basing its decision on rules of decision derived from Merrell Dow Pharmaceuticals, Inc. v. Havner, 953 S.W.2d 706, 720 (Tex.1997). That was a Bendectin case in which the applicable rules of general or generic causation and individual or specific causation are different from those which should be applied in the instant nuclear radiation case. See In re Hanford Nuclear Reservation Litig., 292 F.3d 1124, 1136-37 (9th Cir.2002) (distinguishing Bendectin cases from radiation cases because "[rjadiation is capable of causing a broad range of illnesses, even at the lowest doses”) (citing In re TMI Litig., 193 F.3d 613, 643 (3d Cir.1999)).

. Indeed, Congress spoke plainly and expressly in excluding from the definition of "public liability” workers’ compensation claims, act of war claims, and certain property claims. 42 U.S.C. § 2014(w).

. The majority depicts the list of harms in § 2014(q) as a "threshold” of proof that must be met before a plaintiff may recover for any other kind of personal injury. But the list is a prerequisite only for jurisdictional purposes; that is, a personal injury plaintiff must allege the occurrence of a nuclear incident causing death, disease, sickness, bodily injury, or property damage or loss, in order to assert a public liability action arising under the PAA.

. See also Beneficial Nat'l Bank v. Anderson, 539 U.S. 1, 6, 123 S.Ct. 2058, 156 L.Ed.2d 1 (2003) ("[T]he Price-Anderson Act contains an unusual pre-emption provision, 42 U.S.C. § 2014(hh), that not only gives federal courts jurisdiction over tort actions arising out of nuclear accidents but also expressly provides for removal of such actions brought in state court even when they assert only state-law claims.” (citing El Paso Natural Gas, 526 U.S. at 484-85, 119 S.Ct. 1430)).

. As a practical matter, many kinds of state-law radiation tort claims require a plaintiff to allege that he or she has suffered some kind of bodily injury, illness, or property damage, which coincidentally may meet the definition of a "nuclear incident” under § 2014(q). But the PAA provides that state-law rules of decision, not § 2014(q)’s definition of a "nuclear incident,” determine what a plaintiff must prove in order to recover on a tort claim in a "public liability action.”

. Huson was overruled in part, on other grounds that are not relevant here, by Harper v. Virginia Department of Taxation, 509 U.S. 86, 113 S.Ct. 2510, 125 L.Ed.2d 74 (1993), as recognized in Reynoldsville Casket Co. v. Hyde, 514 U.S. 749, 753, 115 S.Ct. 1745, 131 L.Ed.2d 820 (1995).